[CHAMBERSBURG, OCTOBER, 20, 1828.]

LONG and another *against* LAUFMAN and others, Commis-
sioners of the County of Franklin.

### IN ERROR.

A bond given to A., B., and C., commissioners of a county, and their successors,.
may be sued in the names of their successors.

A bond, given to commissioners of a county, to secure the performance of a
contract for building a bridge, is valid, though not expressly directed by any
act of assembly.

Query, whether the commissioners are bound by the report of the court and
grand jury, in respect to the materials of which the bridge is to be built? But
if they are, it is no defence to a contractor, sued on his bond, that they have
deviated from such recommendation.

Nor, that such bridge was not built on the public highway, if it was as near it
as public convenience required.

ERROR to the Court of Common Pleas of *Franklin* county.

*Crawford*, for the plaintiffs in error.
*Chambers, contra.*

The opinion of the court was delivered by

ROGERS, J.—Several objections were made in the Court of Com-
mon Pleas, to the recovery of the plaintiffs, and the answers of the
court to the points submitted by the defendants' counsel, have been
assigned for error. The objections were in substance, that the suit
should have been brought in the name of the obligees, or by the
commissioners of *Franklin* county, in their corporate capacity:
That the bond was not taken by the authority of an act of assembly,
and is, therefore, void: That the viewers reported a wooden bridge,
in which the grand jury and court concurred; and that the commis-
sioners contracted for one of different materials: That the report of
the viewers, approved by the court, and money paid in pursuance
thereof, was in bar of the action; and lastly, that the bridge was not
built on any public road or highway, nor were any steps taken for
changing the route of the road, as required by the act of assembly of
the 1st of *March*, 1815.

The suit was brought against *Benjamin Long*, the contractor,
for an alleged breach of contract in building a bridge in the county
of *Franklin*, and against his sureties, who undertook for the faith-
ful performance of the work. It is brought in the name of *Philip
Laufman, Jacob Wonderlich*, and *Benjamin Hyers*, the present
commissioners, on a bond, which was given by the defendants to
*David Bezou, Frederick Mills*, and *Andrew Thompson*, commis-
sioners of the county of *Franklin*, and their successors in office.
The objection is, that the suit should have been brought, in the
name of the obligees, or in the corporate name of the county. The

(Long and another *v.* Laufman and others, Commissioners of the County of Franklin.)

breach of the contract being ascertained, the objection is merely technical, and would have the effect of turning the county round to a new suit. As the Court of Common Pleas justly remarks, the office of commissioner is known to the laws, and the present plaintiffs sue as successors to the obligees named in the bond. Upon the principle, that *modus et conventio vincunt leges,* the defendants, who were parties to the contract, are estopped to deny the right of the plaintiffs to maintain this suit. *Reed* v. *Ingraham,* 3 *Dall.* 505, is strong to this point. That was an action brought by the assignee of a stock contract, to recover the amount of the difference due on the contract, which was expressed in these words:—

"On the 18th of *April,* 1792, I promise to receive from *Joseph Boggs,* or order, ten thousand dollars, six per cents, and pay him for the same, at the rate of twenty-three shillings, &c. per pound.
*"Francis Ingraham."*

It was assigned to *William Reed* or order, and suit was brought in the name of *Reed,* and the objection was to the form of the suit, on the ground, that it was not negotiable, so as to enable the assignee to recover in his own name. The action is well brought, say the court, as it is founded on a contract, in which the defendant expressly stipulated, that he would receive the stock from, and pay the price to *Joseph Boggs,* or order. On general principles of law, stock contracts cannot be regarded as negotiable; but a contractor may certainly make himself liable as if they were so, and the maxim, *modus et conventio vincunt leges,* applies forcibly to the case. And this derives additional weight from the circumstance, that until the decision of this court, in a case at *Pittsburg,* it was uncertain, whether counties were to be regarded as corporations, and liable to sue, and to be sued as such. And even now, it may be a matter of some doubt, what is the proper form of such contracts, whether in the corporate name of the county of *Franklin,* or as the commissioners of the county of *Franklin.* In the twenty-first section of the act of assembly of the 6th of *April,* 1802, the commissioners, are authorized to make the contract, without prescribing the form in which it shall be made; and the twenty-sixth section of the act of assembly of the 11th of *April,* 1799, prescribes, "That the commissioners of each county within this commonwealth, shall have, and use one common seal, for the purpose of sealing their proceedings; and copies of the same, when *signed* and *sealed* by the *said commissioners,* and attested by their clerk, shall be good evidence of such proceedings, on the trial of any cause in any of the courts within this commonwealth." Although it may be uncertain, yet it would rather strike me, that the contracts of the commissioners should be made in the corporate name of the county; but I am not disposed to reverse this cause on that objection. In *Kean* and another v. *Franklin,* 5 *Serg. & Rawle,* 147, an objection simi-

lar, in one respect, to the present, was taken and decided by the Supreme Court. That was a suit in the name of *Walter Franklin,* President of the Orphans' Court, &c., on a recognisance given to *John Joseph Henry,* and his successors in office. The objection (which was overruled by the court,) was, that the suit should have been brought in the name of the executors of Judge HENRY. "I consider," says Chief Justice TILGHMAN, who delivered the opinion of the court, "the recognisance to the president and his successors, the same as if it had been to the president for the time being."

It has been further contended, that the bond not being taken under the authority of an act of assembly, is void. It is true, that there is no act requiring them to use this precaution, in relation to public contracts, nor is it necessary that they should be ordered to do so. Having the power, and indeed, being enjoined by the twenty-first section of the act of assembly of the 6th of *April,* 1802, to erect the bridge by *contract,* or otherwise, as might seem to them most expedient, they, as a necessary consequence, have the right to exact security for its faithful performance. It is a measure of precaution, highly necessary to the public safety; a neglect of which, would be highly censurable in the commissioners. But with what colour can the defendants object to the bond? It is a voluntary bond, forbidden by no act of assembly, and which may be supported at common law. It amounts to a stipulation on their part, which they are prevented from denying, for the maxim applies, *volenti non fit injuria;* and this distinguishes this case from *Beacom et al.* v. *Holmes. Cochran et al.* v. *M'Knight,* 13 *Serg. & Rawle,* 190, and *M'Kee et al.* v. *Stannard.* Those were cases of bonds given to obtain a discharge from imprisonment, and even varied from the conditions prescribed by the act of assembly, binding them to harder terms than the plaintiff had a right to exact. This was a voluntary bond, good at common law, and contrary to no act of assembly, the act being entirely silent as to the form of the contract. These principles are abundantly supported in an elaborate opinion of Judge DUNCAN, in *The Bank of the Northern Liberties* v. *Cresson,* 12 *Serg. & Rawle,* 314.

If the public interest requires the bridge to be of stone, rather than wood, a departure from the recommendation of the court and grand jury, will not render the contract void. The recommendation was certainly entitled to high respect, and ought not to be disregarded on slight grounds. It is not, however, absolutely binding, as it may well be doubted, whether the grand jury have power, under the twenty-first section of the act of assembly of the 6th of *April,* 1802, to designate the material of which the bridge shall be constructed.

On the report of the viewers, it is the duty of the court, grand jury, and commissioners, to determine, whether the bridge is ne-

(Long and another *v.* Laufman and others, Commissioners of the County of Franklin.)

cessary, and would be too expensive for the township or townships to erect; which being entered of record, it becomes the duty of the commissioners to procure an estimate, &c. of the money which will be necessary to erect such bridge, and the commissioners of the county shall provide the same out of the county taxes, and proceed forthwith to have such bridge erected by contract, or otherwise, as shall seem to them most expedient. If they have the power, it is by implication, as it is not expressly granted in the act. The authority of the commissioners is very extensive in relation to this matter. They have a discretion, which seems to have been well exercised, as no objections have been made by the county. It comes with a bad grace from the defendants, who were as well aware of the defect of power, if any existed, as the commissioners. They have received their money under the contract, and wish to avoid it, when sued for on breach of their agreement.

The report of the viewers, as mentioned in the *fourth* exception, is no sufficient answer to this action. It was left by the court, as a persuasive fact for the jury, but not as conclusive of their right; and in this direction there was no error. The burden of proof was on the plaintiffs, who were bound to satisfy the jury, that there was a defect in the construction of the bridge. We concur in opinion with the Court of Common Pleas, that the bridge not being on the public highway, does not render the contract void. If the jury were satisfied, as it appears they were, that it was built near enough to the public road on which it was intended it should be erected, for the public convenience, it is sufficient for the maintenance of this suit, without changing the route of the road, as prescribed by the act of assembly of the 1st of *March,* 1815.

Judgment affirmed.