## O'Loughlin *et al.* *versus* The County of Jefferson.

1. Parties may in advance establish other tribunals than those provided by law for adjusting controversies arising out of their contract, if they violate neither public policy nor morals. *Conventio vincit legem.*

2. The parties may modify the mode provided by the Act of June 13th 1836, for assessing damages for any deficiency in erecting a bridge; provided the public interests are equally well protected.

3. A builder contracted to build a county bridge; the commissioners took his bond, with sureties, for the performance, accepted the bridge when finished, and paid him all the contract price. *Held,* that such arrangement was lawful.

4. The bridge afterwards fell, from deficiency of the work. *Held,* that the contractor and his sureties were liable in a suit on the bond, and the county was not bound to proceed for the assessment of damages in the mode provided by the Act of June 13th, 1836.

October 24th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Jefferson county*, No. 68, to October and November Term 1867.

This was an action of debt brought by the county of Jefferson, against Coleman R. O'Loughlin, John Gallagher and Charles De Sadler. The writ issued March 31st 1863.

On the 26th of October 1861, O'Loughlin entered into a contract with the county of Jefferson, to build a bridge over Little Toby creek. The contract stipulated that the bridge was to be built on the "White plan," and specified in minute detail the manner, dimensions of the bridge, &c. It contained this clause: "It is also understood that the said O'Loughlin is to furnish all the materials for building said bridge, and to use in the erection of the same good and substantial timber, iron, bolts, plank, &c. The whole to be a complete structure, done in a good and substantial manner, and to be completed on or before the 1st day of February 1862." O'Loughlin was to be paid $920 for the work, $200 in hand, and the balance as the work progressed—the county commissioners "reserving the right to retain as much as will secure them against damage."

At the same time O'Loughlin, with the other defendants as his sureties, entered into a bond to the county of Jefferson in the penalty of $1000, conditioned, "that the above bounden Coleman O'Loughlin shall well and faithfully and truly fulfil the agree-

ment this day entered into with the county of Jefferson, for the building of a bridge across Little Toby," &c. The bridge was finished about the 1st of March 1862.

There was evidence that the county commissioners examined it after it was finished, said it was a good bridge, and accepted it. It was opened for public use.

During the progress of the work, O'Loughlin received from the county $821.08, and the balance of the contract-price on the 12th of May 1862, after the bridge was finished. The bridge fell in July 1862. There was evidence as to the workmanship on the bridge, that it was well built, &c.; that on the plan contracted for "the keys of the bridge should be kept wedged up as the timber shrinks;" that the keys had been tightened when O'Loughlin and his hands left the work on its completion, &c.

Amongst other points, the plaintiff submitted the following, which was affirmed:—

That the inspection of the bridge by the commissioners, their paying for it, and its being opened to the public use, did not release O'Loughlin from his covenant to do his work in a good and substantial manner, and if the loss of the bridge resulted from defects either in material, work, or the manner or theory on which the work was done, the plaintiff is entitled to recover.

The defendants' points, and the answers of the court, were as follows:—

"1. Upon the erection of county bridges it is the duty of the commissioners, after notice of completion by the contractor, to make application to the Court of Quarter Sessions for the appointment of viewers to examine the bridge, and if they, after notice, examined the bridge, and took up the contract and paid for it, the county is bound by their acts; and if the bridge afterwards fell, they cannot take advantage of their own wrong and recover back the money paid."

"We answer defendant's 1st point substantially in the negative. The contractor was as much required to have viewers appointed as the commissioners."

"2. The Act of Assembly furnishes a specific mode of adjusting the damages on failure in erecting a county bridge; and if the commissioners by their act changed the mode of arriving at a correct conclusion in regard to said bridge, they cannot sustain an action upon the bond."

"We answer this point in the negative."

"3. O'Loughlin and his sureties gave their bond for performance of contract under and in view of the mode of determining the contract prescribed by law. The commissioners having assumed the responsibility of examining the bridge, and accepting it and paying for the same, the county is bound by their acts, and they

are responsible for the consequences, and not the defendant in this action."

" We think by the failure of both parties to obtain a view of this bridge till after it fell and could not be viewed, the bail are not released from responsibility, but are liable for damages sustained by the county, if it was caused by default of O'Loughlin."

The court (Campbell, P. J.) further charged:—

*   *   *   *   " The several sections of the Act of 1836 giving a specific remedy upon the contract by either party, it is contended redress by action at law is excluded. We are strongly impressed with the opinion that such is the law; but in this case neither the commissioners nor the contractor have seen proper to have viewers appointed under the act, although either party had the right to do so; but the contractor finished the bridge, and the commissioners, at least a majority of them, went there and examined the structure, pronounced it good, paid the balance of the money, and it don't appear that either party intended to do anything further, but the bridge was to be used by the public and considered a county bridge; but in some three months it was found the structure was unfit for crossing and likely to tumble down, and actually did so in a short time after. Then a view could not be had—the bridge was gone. Can the contractor screen himself from responsibility? We here instruct you, although the question is not free from doubt, that the defendant and bail are liable on the bond for such damages, if any, as the county has sustained."

The jury found a verdict for the plaintiff for $1000.

The defendants took a writ of error, and assigned for error the answers to the points, and the portion of the charge above stated.

*W. P. Jenks*, for plaintiffs in error, cited Acts June 13th 1836, §§ 39, 40, 41, 42, Purd. 877, pl. 61, 62, 63, 64, Pamph. L. 560; March 21st 1806, § 13, Purd. 41, pl. 5, 4 Sm. L. 332; Lehigh Co. *v.* Kleckner, 5 W. & S. 185; McKinney *v.* Monongahela Navigation Co., 2 Harris 65; Lauman *v.* Young, 7 Casey 306; Long *v.* Franklin Co., 2 Rawle 154.

*A. L. Gordon*, for defendant in error, cited Long *v.* Franklin Co., 2 Rawle 154.

The opinion of the court was delivered, October 31st 1867, by

THOMPSON, J.—Parties to a contract for executing work, may provide in advance a mode for the adjustment of controversies which may arise out of it. They may establish, if they choose, other tribunals than those provided by law, provided they violate neither public morals nor public policy. *Conventio vincet*

[O'Loughlin *v.* County of Jefferson.]

*legem,* is a maxim on that subject, and it is illustrated by many cases, from Coon *v.* The Monongahela Nav. Co., 6 W. & S. 101, to the present time. The principle is of importance in this case.

There is a mode provided by the Act of 13th June 1836, Pamph. L. 555, for assessing damages for any deficiency in the erection of a county bridge. But, like any other remedy, it is in the power of the parties to modify it and adopt a different one, provided the public interests are equally well protected by the substitute. The Act of Assembly contemplates, in cases where bridges are built for a county by contract, that the contract price is to be retained and paid after a view approving the bridge, or the balance in case of damages assessed according to the act. But in sparsely populated counties, bridges are not often built in this way, the contractor generally requiring to be paid as his work progresses, and in this way the contract price is usually consumed or partly so by the time the work is competed.

A substitute for the retention of the money would obviously be, to take security for the due and faithful performance of the contract. The public can be as well protected in this way as any other, and the contractor ought not to complain, nor his bail, after agreeing to and receiving the benefits of a contract which directly leads to a different mode of getting at the damages from that of the Act of Assembly. That was the course pursued here. No other could have availed the county, as the contract was made. Under the act it would have required the retention of the whole money; but the contract as made, required payment as the work progressed until the bridge was supposed to be completed, when only $102.93 actually remained unpaid. Retention of money was not relied on as security for the performance of this contract, but the bond now in suit. This was not authorized by the statute, says the plaintiff in error. True, nor is it forbidden by it. It was a common law bond or stipulation, and not violative of any statute. Just such a bond was held to be obligatory, and the bail liable, in just such a case as this, cited by the defendant in error, of Long *et al. v.* The County of Franklin, 2 Rawle 154, and it conclusively rules this case on this prin ciple. The condition of the bond in this case could only be satisfied by that sort of execution of the contract which it guaranteed, and that could easily be determined by the requirements of the contract. To ascertain whether the condition was broken or not, was the object of the suit; and it was no reply to say that the damages should have been assessed by viewers under the act. No such thing was contemplated by the contract. It proceeded on a different principle, as already shown. To carry out the provisions of the act by viewers, the contract price should have been retained, which was not done, but the bond was substituted to meet the case of damages from deficient execution.

6 P. F. Smith—5

[O'Loughlin *v.* County of Jefferson.]

It could therefore only be satisfied by performance according to its condition ; and this is a sufficient answer to the ground taken that the act of the commissioners in receiving the bridge from the contractor and paying him the balance of the purchase-money, relieved the bail. No such act would have that effect, unless it had been so stipulated or the obligation actually lifted. While it was evidence on the question of performance, it would have been error to have allowed it any greater effect. In sustaining the action on the bond, the court was entirely right.

The complaint of an unqualified answer to the plaintiff's 1st point we think unfounded. It is clear that in affirming it without qualification, the court did not mean to instruct the jury that the defendants were liable for deficiencies traceable to the plan furnished by the commissioners. In answer to the plaintiff's 2d point the learned judge expressly charged, that " the defendant O'Loughlin was not responsible for any defect in the plan of the bridge." The words used on this point, viz., " *the manner or theory* on which the work was done," were evidently used as synonymous, meaning the same thing, namely, the manner ; for this the contractor was, expressly liable by the contract. For the theory on which the bridge was built he was not, and so the court said. This exception is not sustained ; and, seeing no error in the record, the judgment is affirmed.