STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-11-06
~~AP-~~ - KEN - 11/11/2011

STEVEN R. DANZIG,
    Petitioner

v.

ORDER ON RULE 80C APPEAL

MAINE BOARD OF SOCIAL
WORKER LICENSURE,
    Respondent

Before the Court is Steven Danzig's appeal pursuant to M.R. Civ. P. 80C from a

December 10, 2010 decision of the Maine Board of Social Worker Licensure that found

Mr. Danzig to have engaged in improper private practice and denied his application to

become a Licensed Clinical Social Worker because he lacked the required internship

credits.

FACTS

On April 15, 2010, Steven Danzig submitted an application to the Office of

Licensing and Registration to become a Licensed Clinical Social Worker (LCSW). (Vol.

2 R. 3.)[1] Among other things, an applicant to become a LCSW must demonstrate that he

---

[1] The administrative record came in two volumes. The volume first contains only the
hearing transcript and hereafter will be referred to as "Tr." The second volume contains
all other agency records and will be referred to as "Vol. 2 R."

1

has completed a qualified two-year internship, but may not receive credit for practice with "self-employed licensees." 32 M.R.S.A. § 7053(1)(A)(1); 02-416 C.M.R. ch. 13, § 5(1)(D). Additionally, an individual licensed as a Licensed Master Social Worker-Conditional Clinical (LMSW-CC) may not engage in private practice. 32 M.R.S.A. § 7053-A(1). On November 12, 2010, the Board of Social Worker Licensure (the Board) held an adjudicatory hearing due to concerns with Mr. Danzig's compliance with these provisions. (Tr. 1.) By decision of December 10, 2010, the Board of Social Worker Licensure denied Mr. Danzig's application to be licensed as a LCSW. (Vol. 2 R. ii.)

Mr. Danzig's professional record is as follows: He received his Bachelor's degree in social work in 2001, and his Master's degree in social work in 2007. In 2004, Mr. Danzig incorporated Danzig Counseling Services (DCS), which operated as a licensed outpatient substance abuse agency. (Tr. 24-26; Vol. 2 R. 155, 156.) Mr. Danzig has held various substance abuse licenses for this purpose, including Licensed Alcohol and Drug Counselor. (Tr. 24, 27-28.)

After completing his Master's degree in 2007, Mr. Danzig undertook steps necessary to become a LCSW. First, in 2008, Danzig established a licensed mental health agency within the DCS corporation. (Tr. 36; Vol. 2 R. 154.) Mr. Danzig avers that the purpose of establishing a licensed mental health agency within DCS was to facilitate completion of his internship hours. (Tr. 33.) Second, he obtained his license to practice as a Licensed Master Social Worker – Conditional Clinical (LMSW-CC), a prerequisite to completion of a successful internship. (Tr. 39-40.) Third, Mr. Danzig began working in consultation with a LCSW in order to build his clinical internship hours. (Tr. 41.)

2

DCS was formed as a for-profit "professional corporation" under Maine law. (Vol. 2 R. 156.) Aside from Mr. Danzig, other personnel involved with DCS include Jennifer Danzig, Timothy McBrady, and Barbara Harding-Loux. Jennifer, Mr. Danzig's wife, is an accountant by trade, and serves as a business manager for the company. (Tr. 63.) Mr. McBrady serves as the clinical supervisor of the substance abuse agency prong of DCS. (Tr. 63, 103-104.) Ms. Harding-Loux is a LCSW who was contracted by the mental health agency of DCS to provide Mr. Danzig with the consultation required by his clinical internship. (Tr. 41-42.) Mr. Danzig considers himself the "executive director," with final decision-making authority. (Tr. 63-64.) Mr. Danzig is 100% owner of DCS, and he and Jennifer are the only two directors. *Id.*

For tax purposes, DCS was established as an S corporation. (Vol. 2 R. 160.) This means that any net profit goes directly to the shareholder to be taxed, rather than taxed first at the corporate level. (Tr. 98.) Additionally, a shareholder who provides services to the corporation must be paid reasonable compensation, which is then reported on a W-2 as wages paid. (Tr. 100; Vol. 2 R. 160.) Thus, Mr. Danzig regularly received W-2s for his services rendered to the company. (Vol. 2 R. 245-256.)

It was in this context that Mr. Danzig completed his internship hours. Mr. Danzig, through DCS's mental health agency, contracted Ms. Harding-Loux to serve as his "Clinical Supervisor" for the purpose of completing his consultation hours. (Vol. 2 R. 142.) Notably, Mr. Danzig had the authority to fire her. (Tr. 70.) Ms. Harding-Loux's primary source of employment was outside DCS, with the Raymond School Department and her own private practice. (Tr. 119.) Ms. Harding-Loux understood her job as providing "clinical supervision for [Mr. Danzig] as he saw clients and in his practice to

3

clinically oversee that, to make sure ethically and basically clinically that he was providing the best service." (Tr. 120.) The supervision typically consisted of a one-hour consultation each week in the DCS office, plus phone calls or email communication when Mr. Danzig had issues of concern. (Tr. 44, 120-121.) Both parties testified that Ms. Harding-Loux was independent enough to speak out if she disagreed with Mr. Danzig's professional conduct. (Tr. 43, 121-122.)

On November 12, 2010, the Board held a hearing to discuss Mr. Danzig's LCSW application in light of concerns about his internship experience at DCS and other evidence obtained as a result of an unrelated complaint. (Vol. 2 R. 1.) On December 10, 2010, it issued a written decision, finding Danzig to have violated:

I.    10 M.R.S. § 8003(5-A)(4), by engaging in private practice as defined by the Board's statute in 32 M.R.S. § 7001-A(9) which is prohibited conduct under 32 M.R.S. §7053-A(1) if of a clinical nature and engaged in by a Licensed Master Social Worker-Conditional Clinical; and

II.   10 M.R.S. § 8003(5-A)(5) by violating Board Rules, Ch. 13, Sec. 5(1)(D), which states that credit for a clinical internship by a Licensed Master Social Worker-Conditional Clinical will not be given for "formal or informal affiliations of licensees or self-employed individuals."

(Vol. 2 R. v.) Rejecting the IRS definition of self-employment, the Board used two dictionary definitions[2] of the term and concluded that Danzig was "not an employee of

---

[2] The Board wrote the term self-employment "as commonly used is defined by Webster's College Dictionary, 1995 ed. as 'Earning one's living from one's own profession or business, esp. as a freelancer.' The Encarta Dictionary: English defines self-employment as 'controlling own work. Earning a living by working independently of an employer, either freelance or by running a business.'" (Vol. 2 R. v.)

4

DCS but rather is self-employed." *Id.* The Board stated, "[t]here is little doubt that

Steven Danzig was, indeed, self-employed since he owned and 'ran' the business, was

president of the agency, was the sole shareholder and executive director of the agency,

hired and fired personnel, was the sole licensed social worker providing services to the

clients at Danzig Counseling Services' mental health agency, and by his own admission

made the final decision on most matters." *Id.*

The Board opted not to issue sanctions, but denied Mr. Danzig's application to

become a LCSW. (Vol. 2 R. vi.) In this petition, Mr. Danzig challenges the Board's

decision as based on error of law and unsupported by substantial evidence in the record.[3]

(Br. of Pet. 14.) Both the Board's finding of improper private practice and deficient

consultation hours center on the issue of what it means to be "self-employed."

## STANDARD OF REVIEW

The court must affirm agency decisions unless it finds an abuse of discretion,

error of law, or findings unsupported by substantial evidence from the record.[4] *Thacker*

---

[3] In his petition, Mr. Danzig lists most of the grounds for reversal and modification available under 5 M.R.S.A. § 11007(4)(C), *see* FN 4 *infra*, but only addresses the two above in his brief.

[4] Under the statutory iteration, the Superior Court may only reverse or modify an administrative decision if it is:
    (1) In violation of constitutional or statutory provisions;
    (2) In excess of the statutory authority of the agency;
    (3) Made upon unlawful procedure;
    (4) Affected by bias or error of law;
    (5) Unsupported by substantial evidence on the whole record; or
    (6) Arbitrary or capricious or characterized by abuse of discretion.
5 M.R.S.A. § 11007(4)(C).

*v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013 (citation and quotation omitted). The burden of proof is on the petitioner to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff v. Maine State Ret. Sys.*, 661 A.2d 167, 170 (Me. 1995) (citation omitted). "Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result." *Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982) (citation omitted). Rather, the court will defer to administrative conclusions when based on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and quotation omitted).

In doing so, the court must give great deference to an agency's construction of a statute it is charged with administering. *Rangeley Crossroads Coal. v. Land Use Regulation Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223. Likewise, the court must accept the agency's interpretation of its own internal rules and regulations "unless the rules or regulations plainly compel a contrary result." *Id.*

STATUTORY FRAMEWORK

The basic requirements for Mr. Danzig to become a LCSW are contained in 32 M.R.S.A. § 7053(1). Among other things, the applicant must demonstrate that he completed "2 years of social work experience with 96 hours of consultation in a clinical setting." *Id.* § 7053(1)(A)(1). The Board has promulgated more detailed requirements for successful completion of so-called internship experience. 02-416 C.M.R. ch. 13, § 5. The internship is completed while "while licensed as a licensed master social worker conditional (clinical) through consultation with a licensed clinical social worker or

6

certified social worker – independent practice." *Id.* § 5(1)(D). Relevant here, the regulations go on to state specifically:

> Credit for consultation experience will only be given to practice in clinical settings such as organized public or private agencies, schools, institutions or other organizations which provide opportunities for contact with other professional disciplines and work experience with broad ranges of clients. Credit will not be given for practice with formal or informal affiliations of licensees or self-employed licensees.

*Id.* (emphasis added).

Additionally, 32 M.R.S.A. § 7053-A(1) states that a LMSW-CC "may not engage in private clinical practice." "Private practice" is defined as "practicing social work on a self-employed basis." 32 M.R.S.A. § 7001-A(9). There is no definition for the term "self-employed" anywhere in the statute or regulations.

The Board has power to deny professional licenses for violation of law or agency regulations, including those established above. 10 M.R.S.A. § 8003(5-A)(4), (5).


ANALYSIS

Mr. Danzig urges that the Board's conclusion he was "self-employed" was an error of law and without substantial record evidence. (Br. of Pet. 14.) The central premise of Mr. Danzig's argument is that he was an employee of DCS, and, thus, could not be "self-employed" under the rule. He argues that the Board erred by considering two dictionary definitions of self-employment, rather than the tax law definition. Mr. Danzig urges the court to consider DCS's status as a separate corporate entity and the fact that he regularly received a W-2 as an employee of DCS.

First and foremost, this is an issue of regulatory interpretation. There is no statutory or regulatory definition of the term "self-employed," and the Board was not

bound to accept the IRS's definition of the term. The court is bound to accept an agency's interpretation of its own internal rules and regulations unless they "plainly compel a different result." *Rangeley Crossroads Coal.*, 2008 ME 115, ¶ 10, 955 A.2d 223. In this case, the Board applied a common sense understanding of the term "self-employed," as encapsulated by the two dictionary definitions. The Board's interpretation of the term "self-employed" ultimately rested on a determination of who possessed ultimate control and decision-making power within DCS. Because the Board's interpretation of the term was practical and rational, nothing in the statutory or regulatory framework could be read to "plainly compel" a result different from the one arrived at by the Board. This deference also comports with the court's obligation not to "second guess the agency on matters falling within its realm of expertise." *Imagineering, Inc. v. Dep't of Prof'l & Fin. Regulation*, 593 A.2d 1050, 1053 (Me. 1991). It is not the court's place to decide what type of clinical internship arrangement should satisfy the decidedly rigorous requirements of LCSW licensure.

Using this reasonable interpretation of the term, the Board had more than sufficient evidence to conclude that Mr. Danzig was "self-employed." The record fully supports its finding that "he owned and 'ran' the business, was president of the agency, was the sole shareholder and executive director of the agency, hired and fired personnel, was the sole licensed social worker providing services to the clients at Danzig Counseling Services' mental health agency, and by his own admission made the final decision on most matters." (Vol. 2 R. v.) In short, Mr. Danzig was the boss. Given these facts, Mr. Danzig has failed to prove that "no competent evidence supports the [agency's] decision and that the record compels a contrary conclusion." *Bischoff*, 661 A.2d at 170. The

8

Court concludes that the Board did not abuse its discretion, commit error of law, or make findings unsupported by substantial evidence.

The entry will be:

The Court AFFIRMS the decision of the Board of Social Worker Licensure dated December 10, 2010.

_____                    _____
DATE                                          SUPERIOR COURT JUSTICE

9

| Date Filed | 1/6/11 | KENNEBEC | Docket No. | AP-11-6 |
|---|---|---|---|---|

County

**J. Murphy**

Action _____ 80C APPEAL

STEVEN R DANZIG                              vs.      STATE OF MAINE BOARD OF SOCIAL WORKER

| Plaintiff's Attorney | Defendant's Attorney     LICENSURE |
|---|---|
| WALTER MCKEE ESQ<br>PO BOX 1051<br>AUGUSTA MAINE   04332 | ROBERT PERKINS AAG<br>6 STATE HOUSE STATION<br>AUGUSTA MAINE 04333-0006 |

| Date of Entry | |
|---|---|
| 1/6/11 | PETITION FOR REVIEW OF FINAL AGENCY ACTION FILED. S/MCKEE, ESQ. |
| 1/14/11 | Entry of Appearance and Position of Agency, filed. s/Perkins, AAG |
| 2/7/11 | Agency Record, filed.   s/Perkins, AAG   (2/4/11)   (in vault) |
| 2/7/11 | Notice and Briefing Schedule issued and mailed to Atty McKee and AAG Perkins. |
| 3/22/11 | Plaintiff's Unopposed Motion For Extension Of Time To File Brief, filed 3/16/11.  s/McKee, Esq. |
| 3/23/11 | ORDER, Murphy, J.<br>Plaintiff's Unopposed Motion for Extension of Time to File Brief is GRANTED.  Plaintiff's brief is due on or before 3/30/11.<br>Copy to Atty McKee and AAG Perkins |
| 3/31/11 | Petitioner's Brief, filed 3/30/11.  s/McKee, Esq. |
| 5/3/11 | Respondent's Brief In Opposition To Appeal, filed 5/2/11.  s/Perkins, AAG |
| 5/11/11 | Petitioner's Reply Brief, filed.  s/McKee, Esq. |
| 6/24/11 | Oral argument scheduled for 8/3/11 at 2:00.<br>List mailed to Atty McKee and AAG Perkins |
| 8/4/11 | Hearing held 8/3/11.  J. Murphy, Walter McKee, Esq, Robert Perkins, AAG.<br>Tape 1437, Index 1352-2190.<br>Under Advisement. |
| 11/14/11 | ORDER on Rule 80C Appeal, Murphy, J.  (11/11/11)<br>The Court AFFIRMS the decision of the Board of Social Worker Licensure dated December 10, 2010.<br>Copy to Atty McKee, AAG Perkins, and repositories. |

| Date of Entry | Docket No. ——————— |
|---|---|
| 11/14/11 | Notice of removal of record/exhibits mailed to Atty McKee and AAG Perkins. |