2003 ME 30

Richard THACKER et al.

v.

KONOVER DEVELOPMENT CORP. et al.

Supreme Judicial Court of Maine.

Argued: Oct. 8, 2003.

Decided: March 5, 2003.

Richard Golden (orally), Clifford & Golden, P.A., Lisbon Falls, for plaintiffs.

Catherine R. Connors (orally), Helen L. Edmonds, Matthew D. Manahan, Pierce Atwood, Portland, for Konover Development Corp.

James E. Smith, Toni Kemmerle, Legal Division, Department of Transportation, Augusta, Richard L. Hornbeck, Moncure & Barnicle, Brunswick, for Town of Topsham.

Panel: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Richard and Sherry Thacker appeal from a judgment entered in the Superior Court (Sagadahoc County, *Brennan, J.*) affirming the decision of the Topsham Planning Board approving Konover Development Corporation's site plan and subdivision applications, and from a judgment entered in the Superior Court (Kennebec County, *Studstrup, J.*) affirming the decision of the Maine Department of Transportation approving Konover's application for a traffic movement permit. The Thackers contend that: (1) the Topsham Planning Board erred when it concluded that Konover's proposed subdivision would comply with the requirements of the Topsham site plan and subdivision ordinances pertaining to the use of existing public roads; and (2) the Maine Department of Transportation erred by failing to perform a level of service analysis and by issuing a traffic movement permit to Konover. We affirm both judgments.

## I. BACKGROUND

[¶ 2] Richard and Sherry Thacker own the Arby's Restaurant that is located on a southeast corner parcel at the intersection of Topsham Fair Mall Road (the Mall Road) and Route 196 in Topsham. There are two means of ingress and egress to the Mall Road from Arby's. The first is provided by an unsignalized paved accessway (Arby's access drive) that begins 190 feet southwest of Route 196. Four other businesses located on two other lots also have direct access to Arby's access drive. The second means of ingress and egress to Arby's is located a little farther southwest at a currently unsignalized intersection formed by the Mall Road, the access drive for the Tire Warehouse and other commercial establishments on the southeasterly side of the Mall Road, and, directly across the street, an access drive for Hannaford Brothers on the northwest side of the Mall Road. Arby's access drive and the access road for the Tire Warehouse are connected by a private service road (the Bank service road) that runs parallel to the Mall Road across a parcel, with several commercial establishments including Gardiner Savings Bank. Directly across the Mall Road from the entrance to Arby's is Winners Circle, a drive that provides access to McDonald's and Wendy's restaurants.

[¶ 3] In February 2001, Konover Development Corporation applied for site plan and subdivision approval from the Topsham Planning Board so that it could subdivide a large parcel of land adjacent to the Mall Road and construct a Wal–Mart Superstore and a second retail store on two of the new lots. Konover retained Site-

lines, P.A., a civil engineering and land planning firm, to secure the necessary permits for the project, and Eaton Traffic Engineering to study the impact of the proposed development on traffic and carry out a CORSIM analysis.[1] The subsequent CORSIM analysis was carried out for the Mall Road, a section of Route 196, and neighboring roads. Although the study examined traffic levels at Winners Circle and the access drive to Hannaford Brothers, it did not examine traffic levels for Arby's access drive at the Mall Road.

[¶ 4] From September 2000 until November 2001, the Board held fourteen meetings and workshops at which it considered Konover's proposed site and subdivision plans. The Board retained DeLuca–Hoffman Associates, Inc., a consulting engineer firm, to review the information provided by Sitelines and Eaton Traffic Engineering. In a May 3, 2001 letter to the Board, the DeLuca–Hoffman project engineer made several recommendations in response to Sitelines's plan and questioned whether the proposed additional width of the Mall Road would increase delay time for people making left turns to and from any of the driveways, including the Arby's access drive. On September 18, 2001, the Board reviewed a traffic impact study and discussed a September 14 letter from DeLuca–Hoffman, in which DeLuca–Hoffman agreed with Sitelines that the number of vehicles that would exit from Arby's via the Bank service road to the Mall Road at the Tire Warehouse would not represent a safety or operational concern. At the meeting, Bill Eaton from Eaton Traffic Engineering stated that people who are exiting Arby's access drive and turning left onto the Mall Road would have "incredibly long delays" during peak hours. In addition, the Thackers' attorney expressed concern over the proposed traffic plan because Gardiner Savings Bank would not give the Thackers an easement for Arby's customers to drive across the Bank service road to get to the proposed signal at the intersection of the access road for Tire Warehouse and the Mall Road.

[¶ 5] On November 6, 2001, the Board approved the final subdivision plan contingent upon certain road improvements, restrictions, and requirements. The Board's approval included a written finding that the proposed subdivision "[would] not cause unreasonable highway or public road congestion or unsafe conditions with respect to use of the highways or public roads existing or proposed." The Thackers appealed this decision pursuant to M.R. Civ. P. 80B. The Superior Court affirmed the Board's decision, and the Thackers filed a timely appeal.

[¶ 6] In addition to applying for and receiving site plan and subdivision approval from the Board, Konover applied for and received a traffic movement permit from the Maine Department of Transportation (MDOT) pursuant to 23 M.R.S.A. § 704–A (Supp.2002).[2] In response to a request by the Thackers that MDOT re-

---

1. A CORSIM analysis refers to a computer program which allows the programmer to model individual cars and track their location every second. The resulting analysis gives the level of service for the different intersections at different times of the day and week.

2. Section 704–A(2) provides in pertinent part:
   **2. Permit.** A traffic movement permit must be obtained from the department for any project that generates 100 or more passenger car equivalents at peak hour....

A. For any project that generates 100 or more passenger car equivalents at peak hour, the person responsible for the project is required to make adequate provision for traffic movement of all types into and out of the project area. Before issuing a permit, the department shall determine that any traffic increase attributable to the proposed project will not result in unreasonable congestion or unsafe conditions on a road in the vicinity of the proposed project.

consider its decision based on five grounds, including the left turn issue, the MDOT Commissioner issued a letter to the Thackers setting forth the reasons for its decisions and concluding that there was "no reason to modify its permit decision." The Thackers then appealed pursuant to M.R. Civ. P. 80C on various grounds. The Superior Court affirmed MDOT's decision, and the Thackers filed a timely appeal. We consolidated both appeals.

## II. DISCUSSION

### A. Topsham Planning Board's Approval of Konover's Application

[¶ 7] The Thackers contend that the Board erred by approving Konover's application because the proposed development will prevent vehicles from making a left turn from Arby's access drive onto the Mall Road during peak hours, causing the level of service of the intersection to fail. This, they contend, violates the requirements of Topsham's Site Plan Review and Zoning ordinances and the subdivision statute.

[¶ 8] When a decision of the Superior Court acting in an intermediate appellate capacity is appealed, we directly review the operative decision of a town

planning board "for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *Bragdon v. Town of Vassalboro,* 2001 ME 137, ¶ 4, 780 A.2d 299, 301 (quoting *Springborn v. Town of Falmouth,* 2001 ME 57, ¶ 8, 769 A.2d 852, 855) (internal quotation marks omitted). "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion . . . ." *Forbes v. Town of Southwest Harbor,* 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186. "We will not substitute our own judgment for that [of a local administrative board]." *Id.* A demonstration that no competent evidence supports the local board's findings is required in order to vacate the board's decision. *Id.*

### 1. Topsham Site Plan Review and Zoning Ordinances

[¶ 9] The Site Plan Review ordinance provides that: "[t]he proposed site layout shall provide for safe access and egress from public and private roads by providing adequate location, numbers and control of access points, including site distances, turning lanes and traffic signalization when required by existing and projected traffic flow on the municipal road systems."[3] Topsham, Me., Code § 175–8(C)

---

**B.** The department, together with the appropriate representative of the municipality or municipalities where the project is located, shall discuss with the applicant at a meeting, referred to in this paragraph as a "scoping meeting," the scope of impact evaluation required for the proposed project and the type of proceedings warranted. The applicant shall provide notice to abutting municipalities. If the department determines as a result of these communications that the applicant has demonstrated that the proposed project satisfies standards adopted for projects that generate 100 to 200 passenger car equivalents at peak hour and the department determines that there are no other significant traffic-related issues presented, the department may issue a permit to the applicant without further pro-

ceedings. The department shall adopt rules establishing the submission requirement for a scoping meeting. Those rules must, at a minimum, establish 2 submission standards: one for an expedited review without further proceedings and one for a preliminary review with further proceedings anticipated. The rules must also establish the level of professional certification required by any submission and may not impose undue professional liability on the applicant.

23 M.R.S.A. § 704–A(2) (Supp.2002).

**3.** Konover and the Town of Topsham argue that the Board had no duty to evaluate the effect of the development on Arby's access drive because the drive is not a "road" subject to the requirements of the Town's ordi-

(Sept. 25, 2002). The corresponding provision of the Zoning ordinance provides:

> Proposed developments shall provide for safe access and egress to roads. Safe access shall be assured by providing an adequate number and location of access/egress points with respect to sight distances, intersections and other traffic generators. The proposed development shall not have an unreasonable impact on local roads by degrading the levels of service and shall assure safe interior circulation patterns by separating vehicular and pedestrian traffic within the site.

Topsham, Me., Code § 225–28(A) (Sept. 25, 2002). Both provisions focus on assuring "safe access and egress" to and from public and private roads. The zoning ordinance provision also focuses on whether the proposed development will cause "an unreasonable impact on local roads by degrading levels of service." *Id.*

[¶ 10] The Board's finding that the development "[w]ill not cause unreasonable highway or public road congestion or unsafe conditions with respect to use of the highways or public roads existing or proposed" was supported by substantial evidence.[4] Over the course of the fourteen meetings and hearings held by the Board in considering Konover's application, substantial attention was paid to the effect the expansion of the Mall Road would have on persons entering and leaving Arby's. The Board considered the engineers' evaluations that vehicles exiting Arby's during peak hours would experience difficulty in attempting a left turn from Arby's access drive onto the Mall Road, as well as the alternative means of egress provided by the Bank service road. The Town's and Konover's engineers agreed that any delay turning left onto the Mall Road from Arby's would prompt drivers to exit Arby's by driving across the Bank service road, turning right onto the access road for the Tire Warehouse, and then turning left onto the Mall Road at the intersection, which, as proposed, would be signalized.

[¶ 11] The Thackers assert that the Board should not have considered the access provided by the Bank service road because the Thackers do not have a deeded right-of-way or easement to it. The Board considered, however, that Arby's patrons regularly use the service road. Moreover, the minutes of the September 18 Board meeting reflect that "there is a plan on file signed by the Planning Board [relating to] the Tire Warehouse approval that shows specifically that the access leading from the Tire Warehouse through the Bank property was a public access."[5] The established traffic patterns and an established means of ingress and egress provided by the Bank service road, a private service road dedicated to public use, constitute competent evidence supporting the Board's approval of Konover's application.

---

nances. We do not reach this issue, however, because assuming without deciding that the access drive is a "road" for purposes of the ordinances, the Board's findings were supported by substantial evidence.

4. The Thackers do not challenge the sufficiency of the Board's findings, which consisted of a preprinted checklist of findings without any original findings based upon the administrative record. We do not, however, remand for additional findings in this case because the facts underlying the Board's conclusions are easily identified from the record. When " 'the subsidiary facts [are] obvious or easily inferred from the record and the general factual findings,' " a remand for additional findings is unnecessary. *Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 10, 771 A.2d 371, 375 (quoting *Christian Fellowship and Renewal Ctr. v. Town of Limington*, 2001 ME 16, ¶ 19, 769 A.2d 834, 840).

5. This statement was made to the Board by Bob Faunce, Interim Planning Director of the Town of Topsham.

## 2. Subdivision Statute

■ [¶ 12] Maine's subdivision statute requires that a "proposed subdivision will not cause unreasonable highway or public road congestion or unsafe conditions with respect to the use of the highways or public roads existing or proposed." 30–A M.R.S.A. § 4404(5) (Supp.2002). The Thackers claim that this statutory standard will be violated by Konover's proposed subdivision because the anticipated increase in traffic will reduce the level of service at the intersection of Arby's access drive and the Mall Road during peak hours. A reduction in the level of service of Arby's access drive during peak hours does not, however, constitute "unreasonable highway or public road congestion or unsafe conditions." *Id.* Furthermore, because section 4404(5) is directed at the effect a subdivision will have on highways and public roads, a reduction in the level of service associated with a private access drive does not, standing alone, establish a violation of the statute. The Board did not err by concluding that the proposed subdivision satisfied section 4404(5) of the subdivision statute. Accordingly, we affirm the Board's decision because it is supported by substantial evidence.

## B. Maine Department of Transportation's Approval of Konover's Traffic Movement Permit

[¶ 13] The Thackers contend that MDOT erred by failing to evaluate the reduction in the level of service at the intersection of Arby's access drive and the Mall Road that will result from the project's approval.

■ [¶ 14] When the Superior Court has acted in an intermediate appellate capacity, we directly review the decision of the Commissioner. *Green v. Comm'r of Dep't of Mental Health,* 2001 ME 86, ¶ 9, 776 A.2d 612, 615. The Commissioner's factual findings "must be affirmed unless clearly erroneous[,]" and "[his] decision is reviewed for abuse of discretion, error of law, or findings not supported by substantial evidence in the record." *Id.* "The administrative agency's 'interpretation of a statute administered by it, while not conclusive or binding on this court, will be given great deference and should be upheld unless the statute plainly compels a contrary result.'" *Davric Me. Corp. v. Me. Harness Racing Comm'n,* 1999 ME 99, ¶ 7, 732 A.2d 289, 293 (quoting *Town of Madison, Dep't of Elec. Works v. Pub. Utils. Comm'n,* 682 A.2d 231, 234 (Me. 1996)). "Furthermore, we defer to an agency in those areas within its expertise unless a statute or regulation compels a contrary result." *Green,* 2001 ME 86, ¶ 9, 776 A.2d at 615.

[¶ 15] In accordance with 23 M.R.S.A. § 704–A(2) (Supp.2002), Konover is required to obtain a traffic movement permit from MDOT because the proposed development will draw "100 or more passenger car equivalents at peak hour." According to subsection (A), "[b]efore issuing a permit, [MDOT] shall determine that any traffic increase attributable to the proposed project will not result in unreasonable congestion or unsafe conditions on a road in the vicinity of the proposed project." § 704–A(2)(A).

[¶ 16] MDOT's rules provide that it will "consider all relevant evidence" before determining "whether the developer has made adequate provision for traffic movement . . . in the vicinity of the development area." 17–229 C.M.R. 305 § 7(4)(A) (Weil 2000). MDOT may review design and operations "to the extent necessary" to ensure that a development will "not cause any delay, interference or cause safety problems with the operation of adjacent roadways, adjacent driveways or pedestrian walkways." *Id.* In addition, section 7(8)(A) requires that an off-site traffic study be conducted and section 7(8)(D)(9)

requires that the study include a capacity analysis of "the level of service for each road and intersection in the vicinity of the proposed development." 17–229 C.M.R. 305 § 7(8)(A), (D)(9) (Weil 2000).

[¶ 17] The Thackers specifically contend that MDOT failed to comply with its own rules by not performing a level of service analysis of Arby's access drive when the accessway is in the "vicinity" of the proposed development and would be affected by the resulting increase in traffic. In his written response to the Thackers' request for reconsideration, the Commissioner explained that because Arby's access drive is a driveway, it does not constitute a "road" or an "intersection" under section 7(8)(D)(9) and thus does not need to be reviewed by MDOT.

[¶ 18] MDOT's traffic movement permit rules do not expressly define the terms "road" and "intersection" used in section 7(8)(D)(9) and various other sections, but do define "entrances and exits" as "[a]n access way used by traffic movements of all types to or from properties abutting a highway or public way. As used herein, the term includes all driveways including private residential, commercial and other nonresidential driveways." [6] 17–229 C.M.R. 305 § 2(H) (Weil 2000). The rules contain separate design criteria for "roads" and "entrances and exits," and it is apparent from the rules, considered as a whole, that these are mutually exclusive terms. *Compare* 17–229 C.M.R. 305 § 7(9)(B) ("Design criteria for roads") *with* 17–229 C.M.R. 305 § 7(9)(C) ("Design criteria for entrances and exits").

[¶ 19] Because Arby's access drive constitutes an "entrance and exit" under the regulations, MDOT was not required to perform a capacity analysis pursuant to

section 7(8)(D)(9). This conclusion is consistent with MDOT's own interpretation of its rules, to which we afford "considerable deference." *Langley v. Me. State Employees Ass'n,* 2002 ME 32, ¶ 8, 791 A.2d 100, 102.

[¶ 20] MDOT also did not err by conducting a more detailed review of the Winners Circle and Hannaford access drives. MDOT is charged with reviewing the effect proposed projects will have on traffic "to the extent necessary." 17–229 C.M.R. 305 § 7(4)(A). There is nothing in the applicable rules that prohibit or restrict MDOT from exercising discretion in the level of scrutiny it gives the various roads, intersections, exits, and entrances in the vicinity of a proposed development when reviewing applications for traffic movement permits.

[¶ 21] The Thackers also challenge MDOT's failure to specifically study whether the development will "not cause any delay, interference or cause safety problems with the operation of adjacent roadways, adjacent driveways or pedestrian walkways," *id.,* in conjunction with Arby's access drive. In addition, the Thackers challenge MDOT's consideration of the ability of Arby's customers to use the Bank service road to avoid delays exiting Arby's at peak traffic hours.

[¶ 22] MDOT did not treat Arby's access drive as an "adjacent" roadway or driveway because the proposed development is a considerable distance from Arby's. Although the Arby's access drive is in the "vicinity" of the development, it is not "adjacent" to it. MDOT did not, therefore, err by not examining the effect of the proposed development on the Arby's access drive under the criteria contained in

---

**6.** The Thackers' reliance on the definition of driveway in chapter 299, Driveway Rules, is misplaced because that definition applies to a more limited class of situations than contemplated in chapter 305, Rules and Regulations Pertaining to Traffic Movement Permits.

section 7(4)(A) of its rules. In addition, we reject the Thackers' argument regarding MDOT's consideration of the availability of the Bank service road during peak traffic hours as a means of egress from Arby's for the same reasons we addressed in connection with the Board's consideration of the Bank service road.

The entry is:

Judgments affirmed.