STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO: AP-05-032

PEERLESS INSURANCE COMPANY,        *
                                   *
                    Appellant      *
                                   *
         v.                        *                    ORDER
                                   *
MAINE BUREAU OF INSURANCE,         *    RECEIVED
                                   *
                    Appellee       *


This case comes before the Court on Appellant Peerless Insurance Co.'s

petition for review of final agency action by Appellee Maine Bureau of Insurance

pursuant to M.R. Civ. P. 80C.

## FACTUAL BACKGROUND

In 1999, Mr. and Mrs. Ames purchased a two-family home located on

Drake's Island in Wells, Maine. Since 1999, Peerless Insurance Co. has insured

the property since 1999 as a single-family residence under a homeowner's policy

based on a property inspection report prepared by its agent. Since that time,

however, the Ameses have resided in one of the units on a year-round basis and

rented out the other unit on a weekly basis during the summer months and as a

winter rental to one tenant between the middle of September and the following

June. The Ameses maintain that they informed their agent at the outset that they

planned to continue renting the second apartment.[1]

---

[1] Peerless was under the impression that the Ameses were only going to rent the apartment
for one week to relatives. Peerless relies on the insurance application, which indicates that the
second apartment will be rented for one week to a relative of the Ameses.

In 2003, the residence was destroyed by fire.[2] Peerless inspected the residence after the Ameses built a new two-family residence on the property. The inspector reported that the Ameses rent the second apartment and that Mrs. Ames has a small vacation realty rental business. Mrs. Ames' business is conducted entirely by phone, email, and fax. No clients ever come to the house and she retrieves her business mail at the post office. Based on the inspector's report, on March 1, 2005, Peerless mailed a notice of intent not to renew the Ameses' policy. The notice stated that the reasons for nonrenewal were the following:

> Exposure on premise – the short term rental of parts of the dwelling making the dwelling ineligible for coverage on homeowner's policy and also office exposure for insureds' vacation rental realty business on premise.

The Ameses requested a hearing before the Superintendent to contest Peerless' intended nonrenewal of their policy. The Superintendent refused to approve the nonrenewal of the Ameses' policy and directed the continuation of coverage without lapse.

## DISCUSSION

The main issue in this case is whether Peerless met its burden of demonstrating before the Superintendent of Insurance that the reason for its nonrenewal of the Ameses' homeowner's insurance policy was a good faith reason related to the insurability of the property pursuant to 24-A M.R.S.A. § 3051. Peerless argues on appeal that the Superintendent ignored the fact that the frequent rental of the premises on a weekly basis relates to the insurability of the

---

[2] As a result of the fire, Peerless paid the Ameses $2,500 for landlord furnishings related to the rental use of the house and an undisclosed amount for lost rental income.

property because it brings more people to the property than would a year-round tenant. Peerless also argues that the operation of Mrs. Ames' business generates the same risk-related problems. In short, Peerless maintains that the company does not write homeowner's policies for multi-unit dwellings advertised to the public as short-term rentals or for home businesses because of the increased liability exposure.[3]

In review of an administrative agency decision, the Superior Court, in its intermediate appellate capacity, will uphold the decision unless the agency has abused its discretion, made an error of law, or its findings are not supported by substantial evidence in the record. *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013 1019. On a question of statutory interpretation, the Court will examine the plain meaning of the statutory language in order to ascertain the legislative intent. *Botting v. Dep't of Behavioral and Developmental Servs.*, 2003 ME 152, ¶ 9, 838 A.2d 1168, 1171. In doing so, the entire statutory scheme is considered so that a harmonious result may be achieved. *Id.* The interpretation of a statute by an agency that administers it, while not conclusive or binding on the Court, is given great deference and will be upheld unless the statute plainly compels a contrary result. *Thacker*, 2003 ME 30, ¶ 14, 818 A.2d at 1019. *Id.* With respect to a burden of proof issue, when an agency concludes that the party with the burden of proof failed to meet that burden, the Court will reverse that determination only if the record compels a contrary conclusion. *York Insurance of Maine, Inc., v. Superintendent of Insurance*, 2004 ME 45, ¶ 15, 845 A.2d 1155, 1159.

---

[3]    According to the Ameses, no one communicated Peerless' underwriting guidelines to them.

According to the Maine Property Insurance Cancellation Control Act,[4] an insurer may decide not to renew an insured's policy, however, the insurer must first send to the insured a notice of intent not to renew that includes explicit reasons for the nonrenewal. 24-A M.R.S.A. § 3051 (Supp. 2004).[5] The statute places an extra burden on the insurer regarding the explicitness of its reasons for nonrenewal. Specifically, the statute states that explanations such as "'underwriting reasons,' 'underwriting experience,' 'loss record,' 'location of risk,' 'credit report' and similar insurance terms are not by themselves acceptable explanations of an insurer's intended nonrenewal of a policy." *Id.* Rather, "the reason for nonrenewal must be a good faith reason and related to the insurability of the property."[6] *Id.* Once the insured receives the notice of intent not to renew,

---

[4]    24-A M.R.S.A. §§ 3048-3056 (2000) (Supp. 2004).

[5]    24-A M.R.S.A. § 3051 provides in pertinent part:

> The reason or reasons for the intended nonrenewal action must accompany the notice of intent not to renew and the reason or reasons must be explicit. Explanations such as "underwriting reasons," "underwriting experience," "loss record," "location of risk," "credit report" and similar insurance terms are not by themselves acceptable explanations of an insurer's intended nonrenewal of a policy insuring property of the kind defined in section 3048. The reason for nonrenewal shall be a good faith reason and related to the insurability of the property or a ground for cancellation pursuant to section 3049.

[6]    In 2005, shortly following the decision in *York Insurance of Maine, Inc., v. Superintendent of Insurance,* 2004 ME 45, 845 A.2d 1155, the Legislature amended section 3051 as follows:

> The reason for nonrenewal ~~shall~~ must be a good faith reason ~~rationally~~ and related to the insurability of the property or a ground for cancellation pursuant to section 3049.

In *York,* likened the language "rationally related" to the rational basis test in equal protection litigation. As such, the Court determined that the standard required a showing of "'a reasonably conceivable state of facts' establishing that the insurer's decision is founded in reason, rather than being based on whim or caprice, and is related to the insurability of the property." *York,* 2004 ME 45, ¶ 22, 845 A.2d 1155, 1160. The Court held that the nonrenewal as a result of the homeowners' home daycare business was justified.

In response to the Law Court's interpretation of term "rationally related," the Legislature articulated its concern that the *York* decision could be construed to provide insurers with a lower standard upon which to establish their burden of proof for nonrenewal decisions. Summary of House Amend. A to Comm. Amend. A to L.D. 1853 (121st Legis. 2004). The Legislature noted as follows:

4

the insured may request a hearing before the Superintendent of Insurance. 24-A M.R.S.A. § 3054 (Supp. 2004).[7] At this hearing, the insurer has the burden of proof of demonstrating that the reason for nonrenewal is a good faith reason and related to the insurability of the property. *Id.* Again, the statute reiterates that a statement from the insurer that the risk does not meet the insurer's underwriting guidelines alone is not considered sufficient proof or evidence. *Id.*

Peerless argues that this case is similar to *York Insurance of Maine, Inc. v. Superintendent of Insurance,* whereby the Law Court held that the insurer's decisions not to renew the homeowners' insurance policies were justified when the insureds commenced home daycare businesses. 2004 ME 45, ¶ 25, 845 A.2d at 1161. In *York,* the insurer presented testimony that "the company could be required to defend lawsuits arising from the daycare business even though the

---

*This amendment strikes the word rationally to clarify legislative intent that a reason for nonrenewal must be related to the insurability of the property.* The purpose of this amendment is to clarify the appropriate standard to apply in determining whether an insurance company's decision to nonrenew a homeowner's insurance policy complies with the law. The change in language is intended to maintain the Bureau of Insurance's ability to exercise its statutory authority in hearings to determine when an insurance company was established the existence of proof or evidence for its reason for nonrenewal. Without the amendment, the recent York decision may be construed to provide insurers with a lower standard upon which to establish their burden of proof for nonrenewal decisions.

The amendment is not intended to affect the application of the remainder of the Law Court's analysis in York, including its conclusion that an insurance company's decision not to renew a homeowner's insurance policy is not per se irrational because it was not supported by empirical data.

Summary of House Amend. A to Comm. Amend. A to L.D. 1853 (121st Legis. 2004) (emphasis added).

[7]     Section 24-A M.R.S.A. § 3054 (Supp. 2005) states in pertinent part:

The burden of proof of the reason for the cancellation or intent not to renew is on the insurer. If an insurer's reason for nonrenewal is not based on a ground for cancellation permitted under section 3049, the insurer must provide proof or evidence that the reason for nonrenewal is a good faith reason and related to the insurability of the property. A statement from the insurer that the risk does not meet the insurer's underwriting guidelines alone is not considered sufficient proof or evidence.

policy excludes coverage for business-related losses because, under Maine law, an insurer's duty to defend is broader than the duty to indemnify." *Id.* at ¶ 6, 1158. The testimony specifically indicated particular concern about liability exposure due to possible child molestation claims and increased liability exposure for ordinary slip-and-falls due to the greater number of people who come onto the property. *Id.* This concern was supported by summaries of cases from other jurisdictions whereby other insurance companies had to pay claims arising from home daycare businesses when the policies had business pursuits exclusions. *Id.* at ¶ 8.

In this case, the question becomes whether Peerless met its burden of demonstrating a good faith reason related to the insurability of the property at the hearing before the Superintendent. Although Peerless did submit sixteen exhibits, it did not submit evidence to demonstrate how the existence of short terms rentals increases its exposure to liability.[8] Rather, it relies on the following language from *York*: "A decision not to renew homeowner's insurance is not *per se* irrational because it is not supported by empirical data." *York*, 2004 ME 45, ¶ 22, 845 A.2d 1155, 1160. Despite this language, the insurer in *York* articulated specific concerns particular to daycare businesses, i.e., child molestation claims and slip-and-falls, which concerns were supported by summaries of cases from other jurisdictions. *Id.* at ¶ 8, 1158. By contrast, in the notice of nonrenewal,

---

[8]     Peerless' exhibits included: the homeowner's insurance application (Exhibit 1); Peerless' electronic company notes (Exhibit 2); the underwriting referral form notes (Exhibit 3); the property inspection report (Exhibit 4); a photograph accompanying the application (Exhibit 5); photographs from the inspector (Exhibit 6); photographs taken after the fire (Exhibit 7); printed web pages advertising the property for rent (Exhibit 8); copies of the rental agreement (Exhibit 9); another property inspection report (Exhibit 10); a receipt (Exhibit 11); the underwriting guidelines (Exhibit 12); the insurance policy (Exhibit 13); a copy of *York Insurance Co, Inc., v. Superintendent of Insurance,* 2004 ME 45, 845 A.2d 1155 (Exhibit 14); a copy of the notice of nonrenewal and certificate of mailing (Exhibit 15); and Peerless' statement of the case (Exhibit 16).

Peerless did not explain its specific concerns or provide examples of how short term summer rentals would increase its risk of liability. Rather, Peerless merely indicated that the short-term rentals and the business violated the underwriting guidelines.

a.    Short -Term Rentals

The Superintendent found that the home had been a two-family home for many years prior to the inception of the policy. The Ameses reside in one unit and rent out the other on a weekly basis during the summer, and as a winter rental to one tenant for the rest of the year. Notwithstanding the underwriting guidelines, the Superintendent ultimately held that Peerless "failed to provide sufficient evidence that a few tenants for a three month period and one tenant during the remainder of the year presents any measurably greater liability exposure than if one unit of the home was offered for a rental term of one year and the Insureds could not maintain a consistent tenant for the duration of the year."[9] [10]

A review of the record supports the Superintendent's decision. Primarily, Peerless relies on the mere fact that the underwriting guidelines were violated by the short-term rentals rather than explaining the increased risk to the property due to the rentals. Peerless argues that the statute does not require it to produce

---

[9]    The testimony regarding the increased risk of short-term rentals was based on the increased traffic on the premises. Notwithstanding, the Superintendent found that the insured property is different from a busy hotel or inn with a rapid quest turnover rate. In its briefs, but not in the record, Peerless adds that the increased risk arises from a rising number of tenants residing at the property who are unfamiliar with the property and have less of a concern for its wellbeing.

[10]    Peerless argues that the Superintendent did not have the authority to measure and weigh the risk exposure. Although the statute does not specifically state as much, it is the role of the Superintendent to determine if the insurer has met its burden of establishing a good faith reason for nonrenewal related to the insurability of the property. The Superintendent did not exceed its authority by measuring and weighing the risks.

7

any empirical data when common sense dictates that more than one tenant each year increases the risk to the property. In response to any increased risk of short-term rentals, the Ameses assert is that they live in the residence year-round, know the families they rent to, and essentially act as supervisors.[11]

The legislature was clear in that it envisioned a burden higher than the rational basis test for an insurer to demonstrate a good faith reason for nonrenewal related to the insurability of the property. The legislature further provides guidance as to what evidence does not demonstrate a good faith reason, i.e., a violation of underwriting guidelines and similar insurance terms. Although Peerless contends that it can meet its burden without presenting evidence above and beyond its concern for increased traffic on the property and the violation of the underwriting guidelines, the statute clearly states that there has to be some showing of proof or evidence, other than a violation of the underwriting guidelines, that is a good faith reason for nonrenewal related to the insurability of the property. 24-A M.R.S.A. § 3054 (Supp. 2004). A statement from the insurer that the risk does not meet the underwriting guidelines alone is not considered sufficient proof or evidence. *Id.*

b.   Business

The Superintendent also found that Mrs. Ames operates a real estate rental business coordinating the rental of other properties in her home. However, the evidence demonstrated that all business is conducted by telephone, email, and fax. No clients in connection with that business visit the residence. Peerless

---

[11]   While the Court can take judicial notice of the basic premise that more than one tenant a year may pose a greater risk of liability, the Ameses presence in the residence and personal connection with their tenants diminishes this risk.

argues that the receipt of business packages from the post office to her residence generates the increased traffic. However, Mrs. Ames denies that she receives business packages at her residence, but rather asserts that she collects her business mail at the post office herself.

The Court is of the opinion that the findings of the Superintendent are supported by substantial evidence in the record. The evidence in the record does not compel a contrary conclusion.

The entry is as follows:

The decision of the Superintendent is AFFIRMED.

DATE: _January 27, 2006_

_____
Roland A. Cole
Justice, Superior Court

Date Filed JUNE 8 2005    CUMBERLAND    Docket No. AP-05-32
                              County

Action    80C APPEAL

PEERLESS INSURANCE COMPANY                MAINE BUREAU OF INSURANCE
                                          PAUL & BONNIE AMES

                                    vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JAMES D POLIQUIN ESQ | THOMAS C STURTEVANT, JR AAG (MAINE) |
| 415 CONGRESS STREET | 6 STATE HOUSE STATION |
| PO BOX 4600 | AUGUSTA MAINE 04333-0006 |
| PORTLAND MAINE 04112-4600 | (207)626-8800 |
| (207)774-7000 | |