STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: AP-10-015
                                                  RAC - CUM- 12/15/2011

DRUG REHABILITATIONS, Inc.
d/b/a DAY ONE,

              Petitioner,

      v.                                          ORDER

DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

              Respondent.


Petitioner Drug Rehabilitation, Inc. d/b/a Day One's (Day One) appeal of final

agency action by respondent Department of Health and Human Services (DHHS)

is before the court, pursuant to M.R. Civ. P. 80C.

## BACKGROUND

Day One is a Maine organization that provides substance abuse services for

youths and their families. (R. A at 2.) Day One is a MaineCare provider and, as such,

receives reimbursements from DHHS in accordance with the MaineCare Benefits

Manual. (R. A at 2–3.) The relevant provision of the Manual states:

> Adolescent residential rehabilitation PNMIs[1] provide the opportunity for
> recovery through modalities, which emphasize personal growth through
> family and group support and interaction. The PNMI's qualified staff
> shall teach attitudes, skills, and habits, conductive to facilitating the
> member's transition back to the family and community. Adolescent
> residential rehabilitation PNMIs are designed to last at least three (3)
> months and are limited to twelve (12) months per single admission.

MBM 10-144 ch. 101, § 97.08(E) (2011).

DHHS's Division of Program Integrity audited Day One for the time

period of January 1, 2003, through November 30, 2008. (R. D-5 at 1.) Day One

---

[1] Day One is a private non-medical institution (PNMI). (Pet.'s Br. 2, n. 2.)

1

had treated 139 MaineCare members during that time period. (*Id.*) The audit found that twenty-four members exceeded the twelve-month maximum length of stay; as a result DHHS demanded reimbursement of $147,843.87.[2] (*Id.*)

Day One requested an informal review arguing that the discrepancy is primarily due to the improper inclusion of bed hold days in the calculations. (R. D-6 at 1.) A bed hold day is used when the client is out of the facility but intends to return in order to complete the treatment plan. (*Id.*) "Providers may only use bed-hold days when there is a reasonable expectation that the member will return to the facility." 10-144 M.B.M. ch. 101, § 97.05-4 (eff. June 3, 2003). There was a forty-five day bed hold day limit that took effect on May 15, 2005, prior to that change there was no limit. (R. C-1 at 3.) For the twenty-four MaineCare members who had exceeded the maximum stay Day One had billed for 1,245 combined bed hold days, including many "transitioning out" days.[3] (*Id.*)

Day One asserted that bed hold days should not be included in the twelve-month maximum. (R. D-9 at 1.) DHHS conducted an informal review and found that the bed hold days should be included in the maximum. (*Id.*) Upon Day One's request, an administrative hearing was held on November 24, 2009. (R. D-10 at 1, C at 1.) In its March 8, 2010, decision, DHHS held that the reimbursement demand was appropriate. (R. B at 1.) Day One filed a petition for review with this court on May 24, 2010.

---

[2] Due to issues surrounding leap year calculations and an auditing mistake the final reimbursement demand has been reduced to $133,674.57. (Pet.'s Br. 10.) Day One concedes that it owes $32,292.82 but disputes the remaining $101,381.75. (Pet.'s Br. 18.)
[3] "Transitioning out" days are used to hold "a resident's spot in treatment open for a while, using bed hold days, until Day One verified that the resident had successfully transitioned back into the community." (Pet.'s Br. 5, n. 6.) These days were primarily used when the person was leaving against medical advice and Day One did not believe that they would be successful and, as a result, it expected the person to return. (Mot. Hearing Dec. 1, 2011.)

2

## DISCUSSION

### 1. Standard of Review

On a M.R. Civ. P. 80C appeal the court reviews the agency's decision for an abuse of discretion, error of law, or findings unsupported by substantial evidence from the record. *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013. The court must not substitute its own judgment for that of the agency and must defer to findings of fact that are supported by substantial evidence in the record. *Rangeley Crossroads Coal. v. Land Use Reg. Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223 (citing *Int'l Paper Co. v. Bd. of Envtl. Prot.*, 1999 ME 135, ¶ 29, 737 A.2d 1047). Additionally, the court must defer to the agency's interpretation of its own internal rules and regulations "unless the rules or regulations plainly compel a contrary result." *Rangeley Crossroads Coal.*, 2008 ME 115, ¶ 10, 955 A.2d 223; *see also State v. McCurdy*, 2010 ME 137, ¶ 15, 10 A.3d 686 (noting that the agency's interpretation must be reasonable).

### 2. Inclusion of Bed Hold Days in Twelve-Month Maximum

Day One argues, and this court agrees, that DHHS incorrectly included bed hold days in reaching its determination as to whether Day One's clients had reached their twelve-month maximum. The regulation defining the twelve-month maximum is unconstitutionally vague since it is ambiguous on the subject of bed hold days.

"A rule or regulation is unconstitutionally vague only if its meaning is so ambiguous or unclear that an ordinary person exercising ordinary common sense must guess at its meaning." *Ne. Occupational Exch., Inc. v. State of Maine*, 540 A.2d 1115, 1117 (Me. 1988) (internal quotation marks and citations omitted). The terminology must allow the regulated individuals and businesses to avoid

3

guessing "how to conduct themselves to comply with the rule." *McCurdy*, 2010 ME 137, ¶ 16, 10 A.3d 686.

Day One relied on *McCurdy* to show that the regulation is ambiguous. In *McCurdy* the regulation in question controlled the size of the scallops harvested in the Cobscook Bay. 2010 ME 137, ¶ 3, 10 A.3d 686. The regulation stated how many scallops were allowed in a certified measuring unit, but it did not state how the enforcing officer selected the measured scallops. *Id.* at ¶¶ 3–5. Similarly, in this case, the regulation says how long MaineCare will cover a member's stay, but it does not explain what is included in that calculation of time. The selection method in *McCurdy* significantly altered how the regulation was enforced and the Law Court found that the regulation was ambiguous since it did not give the fishermen notice on how to comply. *Id.* at ¶ 21.

Here, Day One could not tell from reading the regulation whether or not bed hold days were included in the twelve-month maximum. Initially, DHHS was also unsure how to interpret the regulation. During the administrative hearing Mr. Bishop, a DHHS auditor, testified that the regulation was unclear regarding the impact of bed hold days on the twelve-month maximum.[4]

Day One's interpretation of the regulation is reasonable because excluding bed hold days in the maximum can cause the regulation to contradict itself. For example, consider a hypothetical patient who entered Day One for treatment and

---

[4] Mr. Fortin [DHHS's Attorney]: We've established that it's not clear from the regulations that bed hold days should be included in the counting of that twelve month period but it's not clear that they should be excluded.
Mr. Bishop: Correct.
Mr. Fortin: It's just not clear one way or the other.
Mr. Bishop: It is not clear and that was the statement that I got from Policy that even though it wasn't clear about what to do with the bed hold days it was like I said her opinion that they should be included as part of the twelve month per single admission. (R. C at 23 (from the hearing transcript).)

4

stayed for one month prior to needing to leave for an extended hospital stay. While he was in the hospital his spot in the program was held using bed hold days. After ten months he was able to return to the center to continue his treatment. If the bed hold days were included in the twelve-month maximum then he would only have one-month of MaineCare covered treatment left. This result directly contradicts the regulation that says that treatment is "designed to last at least three (3) months." MBM 10-144 ch. 101, § 97.08(E) (2011). If the bed hold days are not included in the maximum, however, then the patient can return for up to eleven months of MaineCare covered treatment.[5]

Although the agency's interpretation o the regulation is reasonable, the terminology is clearly ambiguous. Therefore, the regulation is unconstitutionally vague concerning the inclusion of bed hold days.

### 3.  Treatment of Transitioning Out Days

The Hearing Officer specifically discussed "transitioning out" days in his recommended decision saying that transitioning out days fall into the general goal of teaching "attitudes, skills, and habits conductive to facilitating the member's transition back to the family and community." (R. A at 6.) Since these days fall into the general goal of the treatment the Hearing Officer reasoned that they should be included in the twelve-month maximum. (Id.)

Day One argues that "there was no competent evidence in the record defining what bed hold days 'while transitioning out' meant, what formal treatment methods Day One used to teach transitioning skills, and what overlap

---

[5] This argument was presented by Day One during the motion hearing. While it is convincing, this particular conundrum was resolved when the regulations were revised effective May 15, 2005, to provide a 45-day limit on bed hold days. The point of the illustration, that the maximum should apply only to treatment days, and bed hold days are not treatment days, is not affected by the change.

5

– if any – existed between the two activities." (Pet.'s Br. 16.) Since "transitioning out" days are utilized for the same purposes as other bed hold days – to hold a spot for a patient who is out of the center but the center reasonably believes the patient will return – they should be treated the same as other bed hold days. Therefore, "transitioning out" days are not included in the twelve-month maximum.

**The entry is:**

The DHHS final decision is vacated. Day One must reimburse DHHS $32,292.82 for the conceded amount billed for actual treatment days over the twelve-month lengths of stay. (Pet.'s Br. 18.)

DATE: December 15, 2011

Roland A. Cole
Justice, Superior Court

6

Date Filed __05-24-10__    __CUMBERLAND__    Docket No. ___AP-10-15___
                              County

Action ___80C Appeal___

DAY ONE                              DEPARTMENT OF HEALTH AND HUMAN SERVICES

                                        vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| PETER G CARY ESQ<br>MITTELASEN, LLC<br>85 EXCHANGE STREET<br>P.O. BOX 427<br>PORTLAND, ME 04112-0427<br>L DENNIS CARILLO ESQ<br>JON DOYLE ESQ<br>150 CAPITOL ST.<br>AUGUSTA ME 04330 | James E Fortin AAG<br>State of Maine<br>Office of the Attorney General<br>6 State House Station<br>Augusta, ME 04333-0006 |

| Date of Entry | |
|---|---|
| 2010<br>May 25 | Received May 24, 2010.<br>~~Petition for Remedy~~ Pursuant to M.R. CIV. P. 80C filed. |