STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-11-44
MMM -KEN-7/18/2012

ANDROSCOGGIN RIVER
ALLIANCE, et al.,
            Petitioners

v.

MAINE BOARD OF
ENVIRONMENTAL PROTECTION,
            Respondent

ORDER ON RULE
80C APPEAL

Before the Court is Petitioners' Rule 80C appeal from a July 7, 2011 Order of the

Board of Environmental Protection that affirmed issuance of a permit to BB

Development to construct Phase I of the Oxford Resort Casino under the Site Location of

Development Act, 38 M.R.S.A. § 481 *et seq.*

## Statutory and regulatory background

The Site Location of Development Act (SLODA) vests the Department of

Environmental Protection (DEP) with authority to "regulate the location of developments

which may substantially affect the environment and quality of life in Maine." 38

M.R.S.A. § 481. The purpose of SLODA is to "insure that such developments will be

located in a manner which will have a minimal adverse impact on the natural

environment within the development sites and of their surroundings and protect the

health, safety and general welfare of the people." *Id.* To obtain approval for a project, a

1

developer must demonstrate compliance with a number of statutory requirements, including a showing that the project will not adversely affect the natural environment, § 484(3), will meet standards for storm water management, erosion, and sedimentation control, § 484(4-A), will not pose unreasonable risk to groundwater, § 484(5), and includes adequate provision for utilities, § 484(6).

Agency regulations further instruct the DEP to consider the "potential primary, secondary, and cumulative impacts" of a development when reviewing applications.[1] 06-096 C.M.R. ch. 372, § 1(A). Directly at issue in this case, "phased developments" under SLODA are to be considered as follows:

> **10. Phased Development.** The Board requires that an application for approval include present plans for all phases of a development to be undertaken on a parcel. In the absence of evidence sufficient to approve all phases of the proposed development, the Board may approve one or more phases of the development based on the evidence then available. Approval of phases, however, shall be based on compliance of the entire proposed development with the standards of the Site Location Law.
>
> NOTE: A proper analysis of the potential primary, secondary and cumulative impacts of a proposed development can be made only when all phases of a proposed development are considered. Also, the plans for site modification and pollution mitigation need to be based on the entire extent of a proposed development in order to insure their effectiveness in accomplishing the desired objectives.

*Id.* § 10.

## Factual Background

In November 2010, Maine voters approved the construction of a casino to be located in Oxford County, Maine. On December 22, 2010, BB Development, LLC

---

[1] The explanatory note to § 1 defines "cumulative impacts" as "the incremental effects of individual developments."

[2] BB Development also submitted a permit for the same project pursuant to the Natural

submitted a permit application to the DEP pursuant to SLODA for development of the Oxford Resort Casino to be located in the Town of Oxford.[2] (R. 18.)

In the narrative description, the application describes the Oxford Resort Casino as a "four-season commercial and entertainment resort facility." (R. 18, § 1.) The narrative explains that "[t]he project will be split into multiple phases for responsible growth." *Id.* However, the application sought permitting for Phase I of the project only, which consists of a 65,000 square foot casino building, 1050 parking spaces, and associated utilities and infrastructure. *Id.*

Ultimately, BB Development's self-proclaimed objective is to establish "Maine's first full-service gaming resort casino." *Id.* The project as a whole will consist of "a building complex for casino gaming activities, restaurants, and conference facilities; a 200 room hotel; a spa; outdoor recreational areas including tennis courts and jogging trails; ATV and snowmobile trailhead and parking area; RV park; and associated infrastructure such as parking, ponding areas, utilities, and vehicular circulation." *Id.*

Several additional components of the record illustrate BB Development's plan for phased development. For instance, a survey document entitled "Phasing Plan" maps the plan as a whole and delineates the areas to be developed incrementally according to three phases. (R. 18, end of vol. 1.) The Phasing Plan reveals the locations for the future hotel, spa, RV park, additional parking, casino expansion and a waste water disposal field. *Id.* At a public information meeting, held December 7, 2010, attendees viewed a Power-

---

[2] BB Development also submitted a permit for the same project pursuant to the Natural Resources Protection Act (NRPA). (R. 18.) The Petition for review states a cause of action under NRPA, alleging that the Board improperly conducted a "Tier 2" permit review to assess wetland impacts when it should have conducted a "Tier 3" review. However, Petitioners presents no facts or law in their brief to support the NRPA claim. *See* note 5 *supra.*

Point presentation containing similar diagrams mapping what was described as a "5-year build-out in three phases." (R. 18, § 25.) The project owners and various consultants described the projected end result, but also explained that the expected phases could shift due to market forces.[3] *Id.*

On March 19, 2011, the DEP approved BB Development's application for Phase I of the Oxford Resort Casino project. (R. 103.) On April 19, 2011, a citizens' group called Androscoggin River Alliance appealed the DEP's approval decision to the Board of Environmental Protection (BEP) pursuant to 38 M.R.S.A. § 341-D(4). (R. 112.) They were principally concerned that the DEP did not consider future water and sewage demands or increased storm water runoff for the facility at full build-out, but rather limited its consideration to Phase I conditions only.

On July 7, 2011, the BEP issued the Order on appeal here affirming the DEP's approval of Phase I of the Oxford Resort Casino. (R. 174.) The Order analyzed the DEP's decision under chapter 372, § 10 and concluded: "[T]he Department correctly reviewed the application for Phase I of the Oxford Resort Casino as a stand-alone project . . . The Board also finds that if the applicant proposes any additional development at this site in the future, the Department is required by Chapter 372 (10) to consider the secondary and cumulative impacts of the entire project . . . ." (R. 174 at 17.) The BEP Order also included two special conditions requiring that BB Development submit for approval, first, additional documentation of financial capacity, and, second, additional

---

[3] As Brian Davis explained: "[I]t's really what we call market driven expansion. If the market says, we don't need anymore hotel rooms but a feasibility analysis showed that a show would be better or a bowling alley would really work here, those are the kind of things that happen as the market develops . . . this is our best guess right now." *Id.*

water supply testing results. (R. 174 at 19-20.) After BB Development submitted additional financial information as per the first condition, the DEP issued a Condition Compliance Order on July 22, 2011, approving the submission.[4] (R. 181.)

On August 5, 2011, Androscoggin River Alliance filed the present 80C petition in this Court, seeking review of the July 7 BEP Order as a whole and of the July 22 DEP Condition Compliance Order. Petitioners' main contention is that the Orders violate SLODA because they failed to consider impacts of the entire proposed project.[5] That appeal is docketed as AP-11-44.

On October 12, 2011, BB Development submitted an application for a "minor revision" to the permit regarding subsurface wastewater disposal. (R. 194.) On December 2, 2011, the DEP issued an Order approving the minor revision. (R. 206.) By that time, Petitioners had already submitted its 80C petition in AP-11-44 and briefing had begun. Thus, on January 3, 2012, Petitioners filed a separate 80C petition for review of the December 2 Order approving the minor revision. That appeal is docketed as AP-12-01.

---

[4] In lieu of submitting the information required by the second condition, BB Development ultimately submitted a "minor revision application," which requested permission to use public water from the Town of Oxford, thus obviating the need for the additional water supply testing required by the July 7 Order. (R. 182.) On September 7, 2011, the DEP issued an Order approving the minor revision for water supply, thus pronouncing the second condition inapplicable. That decision is apparently not part of any appeal before this Court.

[5] Count II in the appeal also asserts violations of the Natural Resources Protection Act, 38 M.R.S.A. § 480-A *et seq.* The Court declines to address this argument, however, as Petitioners have failed to develop it in briefing. *Franklin Prop. Trust v. Foresite, Inc.*, 438 A.2d 218, 221 (Me. 1981) (an issue not addressed by the brief of either party may be waived).

5

Under Rule 80C, the Court reviews agency decisions for "abuse of discretion, error of law, or findings not supported by substantial evidence in the record." *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013. The Superior Court must defer to an agency's expertise and accept its interpretation of a statute or regulation that it administers unless it "plainly compels a contrary result." *Id.* As always, the party seeking to overturn an agency decision bears the burden of persuasion. *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 14, 843 A.2d 18.

When the meaning of a statute or regulation is in dispute, the Court first examines the plain meaning of the language therein. *Daniels v. Tew Mac Aero Servs. Inc.*, 675 A.2d 984, 987 (Me. 1996). Each word or phrase should be "given meaning, and none are to be treated as surplusage if they can be reasonably construed." *Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 11, 896 A.2d 271.

Petitioners' most persuasive argument[6] is that the July 7 BEP Order violates the agency's own rules regarding phased development, contained in chapter 372, § 10. That section, again, states:

---

[6] The Court rejects Petitioners' additional argument that the July 7 BEP Order violates the 2009 SLODA amendment contained in 38 M.R.S.A. § 485-A(1-C). (Pet. Br. 17.) That provision requires the DEP to adopt regulations governing the permitting of "long-term construction project[s]" even when "the specific nature and extent of the development or timing of construction may not be known." Petitioners' position is that § 485-A(1-C) made "planning permits" mandatory for all long-term construction projects. (Pet. Br. 17-18.) To obtain a "planning permit" under agency regulations, an applicant must affirmatively demonstrate that the development, including future build-out, will comply with applicable DEP standards, even though the extent of the development may be unknown at the time of the current phase. 06-096 C.M.R. ch. 380. Planning permits are appropriate for "developments occupying large areas of land that will be constructed over a significant period of time, such as some industrial parks, airports, and resorts." *Id.* § 1. Critically, however, long-term planning permits are described as an "optional

6

> **10. Phased Development.** The Board requires that an application for approval include present plans for all phases of a development to be undertaken on a parcel. In the absence of evidence sufficient to approve all phases of the proposed development, the Board may approve one or more phases of the development based on the evidence then available. Approval of phases, however, shall be based on compliance of the entire proposed development with the standards of the Site Location Law.
>
> NOTE: A proper analysis of the potential primary, secondary and cumulative impacts of a proposed development can be made only when all phases of a proposed development are considered . . . .

06-096 C.M.R. ch. 372, § 10.

The issue here is resolved by careful consideration of the plain language of § 10. First, § 10 requires a developer to submit "present plans for all phases of a development." Second, when evidence is insufficient to approve all phases of a development, an individual phase ("one or more phases") of a development may be approved based on "the evidence then available." The third sentence, however, is operative here: "[A]pproval of phases . . . shall be based on compliance of the entire proposed development with [SLODA]." The Court finds this to mean that *individual phases*[7] may be approved only if the overall proposed development, as represented by the evidence then available, would comply with SLODA standards.

---

alternative to individual approvals for specifically described and located projects." *Id.* Thus, while § 485-A(1-C) made it mandatory for the DEP to adopt rules regarding long-term construction projects, nothing requires that those rules always apply universally, and planning permits remain optional under the language of chapter 380.

[7] BB Development theorizes that the term "phases" in the third sentence means "multiple phases" or future phases. (BB Development Br. 15.) The Court finds, however, that "phases" logically refers to individual phases, because the preceding sentence refers to approval of "one or more" phases in the absence of evidence sufficient to approve all phases.

7

This does not mean that an applicant for one phase must be able to demonstrate compliance with the manifold standards SLODA requires for all phases, as this would obviate the need for phased approval. Rather, it entails a consideration of whether the evidence that *does* exist as to full build-out complies with the applicable SLODA standards. For example, if an applicant for Phase I of a development estimates that sewage demands will triple at full build-out, the DEP must assess that data for SLODA compliance. The Court recognizes that this might entail some inquiry by the permitting body, as it would be senseless, and contrary to the legislative intent, to allow applicants to circumvent §10 by remaining silent about those long-term impacts that can be reasonably anticipated, and about which evidence is available.

The Note serves only to underscore the plain reading of § 10.[8] The reason that approval of individual phases must be based on overall compliance is because, as the Note observes, "proper analysis of the potential primary, secondary and cumulative impacts of a proposed development can be made only when all phases of a proposed development are considered."

Ordinarily the Court defers to an agency's interpretation of its own regulations. However, the Court is troubled by the fact that the agency decision on appeal did not directly address the critical language from the third sentence of § 10. Its silence on that issue, combined with the undeniable plain language in § 10, leads this Court to conclude that the applicable language "plainly compels a contrary result." *Thacker*, 2003 ME 30, ¶ 14, 818 A.2d 1013.

---

[8] The Court is persuaded that the Note after § 10 does not have the full import of an agency rule. 5 M.R.S.A. § 8002(9)(B)(4).

8

Respondents' attempt to downplay the plans for future expansion is unavailing. They characterize the development as a wholly independent, stand-alone project, which *might* be followed by additional phases depending on what the market dictates. (BB Development Br. 2, 9, 10; DEP Br. 6, 10.) However, the record is replete with references to, and even plans for, Phases II and III. For instance, the "Phasing Plan" reveals the locations for the future hotel, spa, RV park, additional parking, casino expansion and a waste water disposal field. (R. 18, back of vol. 1.) As indicated by the public information meeting, BB Development clearly marketed the project as a "5-year build-out in three phases." (R. 18, § 25.) While a casino can generally have an independent function as BB Development urges, (BB Development Br. 9), the resort and attendant buildings and infrastructure were clearly envisioned as part of a comprehensive plan. Even the name of the project, the "Oxford Resort Casino," not the "Oxford Casino," clearly reflects the future plans for the project.

BB Development submitted data directly relevant to future impact under SLODA. For instance, its application packet estimated water supply and wastewater disposal needs of 22,395 gpd, and 60,000 gpd at full build-out. (R. 18, §§ 16, 17.) Because this evidence was clearly available and directly relevant to the compliance or non-compliance of the "entire proposed development," it should have been considered during the permitting process.

The entry will be:

The Court vacates the July 7 and July 22, 2011 decisions of the BEP and remands to the DEP for consideration of all evidence available before deciding whether to grant approval of this phase of development of the Oxford Resort Casino project.

_7/18/12_

DATE

SUPERIOR COURT JUSTICE

10

| Date Filed | 8/5/11 | Kennebec | Docket No. | AP-11-44 |

Date Filed  8/5/11          Kennebec          Docket No. _____ AP-11-44 _____
                             County

Action ____ Petition For Review ____                    **J. Murphy**
                 80C

                                        BB Development, LLC (PII)

Androscoggin River Alliance, et al.    vs.   Maine Board of Environmental Protection

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Stephen F. Hinchman, Esq.<br>537 Fosters Point Road<br>West Bath, ME 04350 | Thomas Harnett, AAG<br>~~Margaret Bensinger, AAG~~<br>6 State House Station<br>Augusta, ME 04333-0006 |

David Van Slyke, Esq. (PII)
Jeffrey Talbert, Esq.
PO Box 9546
Portland, ME 04112-9546

| Date of Entry | |
|---|---|
| 8/9/11 | Petition For Review Of Final Agency Action, filed 8/5/11. s/Hinchman, Esq. |
| 8/30/11 | BB Development's Notice Of Appearance And Position Regarding Petitioners' Petition For Review, filed 8/25/11. s/Talbert, Esq. |
| 9/2/11 | Certification of Record, filed. s/Bensinger, AAG **(Record in vault)** Index to Record, filed. |
| 9/22/11 | Notice and Briefing Schedule issued, mailed to Atty Hinchman, AAG Bensinger, and Atty Slyke. |
| 11/2/11 | Petitioner's Brief, filed 11/1/11. s/Hinchman, Esq. |
| 12/7/11 | Motion For Enlargement Of Time In Which To File Respondents' Briefs And Additional Scheduling, filed 12/1/11. s/Harnett, AAG |
| 12/13/11 | ORDER, Murphy, J. (12/12/11)<br>The briefs of both Respondents are due on 12/15/11, and the reply brief of Petitioners is due on 1/16/12.<br>Copy to Atty Hinchman, AAG Bensinger, AAG Knowlton, Atty VanSlyke. |
| 12/21/11 | Brief of Respondent Maine Board Of Environmental Protection, filed 12/14/11, w/Certification Of Supplemental Record, Index To Supplemental Record, and Certificate Of Service. s/Harnett, AAG |
| 12/21/11 | BB Development, LLC's Rule 80C Brief, filed 12/15/11. s/Talbert, Esq. |
| 1/4/12 | Certification of Addendum to Supplemental Record, Index to Addendum of Supplemental Record, and Addendum to Supplemental Record, filed 1/3/12. s/Harnett, AAG |
| 1/19/12 | Petitioners' Reply Brief, filed 1/17/12. s/Hinchman, Esq. |
| 1/26/12 | BB Development's Notice Of Appearance And Position Regarding Petitioners' Petition For Review, filed 1/23/12. s/Talbert, Esq. |

| Date of Entry | |
|---|---|
| 2/2/12 | Oral argument scheduled for 3/8/12 at 11:30 a.m.<br>List mailed to attorneys of record. |
| 2/21/12 | Motion For Continuance Of Oral Argument, filed.  s/Hinchman, Esq. |
| 2/22/12 | ORDER, Murphy, J.<br>Motion For Continuance is GRANTED.  The parties will be notified by the Clerk of the revised date for presentation of oral argument.<br>Copy to attorneys of record. |
| 4/2/12 | Oral argument scheduled for 5/8/12 at 10:30 a.m.<br>Copy of motion list mailed to Atty Hinchman, AAG Harnett, Attys VanSlyke and Talbert. |
| 5/10/12 | Oral argument held 5/8/12.  J. Murphy presiding, Atty Hinckman, AAG Harnett, Atty Van Slyke, and Atty Talbert present.  Tammy Drouin, Court Reporter.<br>Under advisement. |
| 5/15/12 | Transcript Order, filed 5/14/12.  s/Talbert, Esq.<br>Copy mailed to Tammy Drouin. |
| 5/18/12 | Letter re: Chapter 372 rules, and attachment, filed 5/16/12.<br>s/Hinchman, Esq. |
| 5/22/12 | Letter in response to Atty Hinchman's letter re: Chapter 372 rules, filed 5/21/12.  s/Harnett, AAG |
| 7/18/12 | ORDER ON RULE 80C APPEAL, Murphy, J.<br>The Court vacates the July 7 and July 22, 2011 decisions of the BEP and remands to the DEP for consideration of all evidence available before deciding whether to grant approval of this phase of development of the Oxford Resort Casino project.<br>Copy to Atty Hinchman, AAG Harnett, Atty Talbert, Atty Van Slyke.<br>Copy to repositories. |