STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-10-12
MMM —KEN- 6,25/20 2

NATIONAL ORGANIZATION FOR
MARRIAGE, STAND FOR MARRIAGE
MAINE PAC, and BRIAN BROWN,
    Petitioners

v.

ORDER ON RULE
80C APPEAL

MAINE COMMISSION ON
GOVERNMENTAL ETHICS AND
ELECTION PRACTICES,
    Respondent

Before the Court is Petitioners' Rule 80C appeal from Respondent's February 25,

2010 decision upholding certain subpoenas issued as part of an investigation into whether

the National Organization for Marriage qualified as a "ballot question committee"

pursuant to 21-A M.R.S.A. § 1056-B due to its role in the 2009 referendum vote on gay

marriage.

## Factual Background

On October 1, 2009, Maine's Commission on Governmental Ethics and Election

Practices (the Commission) voted to investigate the National Organization for Marriage

(NOM) to determine whether it was in violation of Maine campaign laws by not

registering as a "ballot question committee" (BQC) under 21-A M.R.S.A. § 1056-B. (R.

1

1.) The investigation was based on concerns over large donations NOM made to Stand for Marriage Maine (SMM), a PAC dedicated to defeating the legalization of gay marriage through the November 2009 referendum vote. *Id.* By the end of the campaign, NOM had reportedly donated $1.93 million to SMM. (R. 11.)

On January 28, 2010, the Commission issued NOM a subpoena setting a deposition where a representative would be required to testify regarding the sources of NOM's revenue in 2009 – including the identity of its donors who contributed $5,000 or more – as well as produce documents to that effect. (R. 15.) Additionally, the deponent would be required to testify about NOM's contributions to SMM and produce all documents reflecting communications between NOM and SMM.[1] *Id.*

On February 11, 2010, Petitioners filed petitions to vacate or modify the subpoenas, arguing that the requests were overbroad and the information was privileged under the First Amendment.[2] (R. 18-22.) On February 19, 2010, Jonathan Wayne, executive director of the Commission, and AAG Phyllis Gardiner sent a thorough memorandum to the Commission members detailing the facts and law pertaining to the petitions. (R. 25.) The memo concluded that the information sought would remain

---

[1] The Commission issued a second subpoena to NOM's executive director Brian Brown, who also sat on SMM's executive committee. He was instructed to be prepared to testify about the "plans and decisions" made by SMM regarding funds spent on the 2009 referendum and all documents reflecting planned or actual expenditures by NOM and SMM relating to the 2009 referendum. (R. 16.)

[2] On appeal, Petitioners rely heavily on two pieces of evidence to demonstrate First Amendment chill. On February 19, 2010, Brian Brown submitted a declaration that detailed how disclosure would alter the way in which he communicates within campaigns in the future. (R. 35.) On February 9, 2010, Joseph Bernatche, a donor to SMM, submitted an affidavit that explained how he had been designated as a "red-hot bigot" online due to public disclosure of his contribution. (R. 34.) The extent to which the Commission was made aware of or considered this evidence is unclear.

2

confidential and was highly relevant to the investigation of whether NOM qualified as a BQC; thus, it was not privileged under the First Amendment. *Id.* at 12-15.

On February 25, 2010, the Commission met and voted to deny the petitions to vacate or modify the subpoenas. (R. 37, 38.) The Commission issued a letter to Petitioners' counsel, which did not include full reasoning, but directed counsel to an online audio recording of the Commission's meeting.[3] (R. 38.)

During the same timeframe, NOM had also initiated a lawsuit in federal District Court challenging the constitutionality of the BQC law, 21 M.R.S.A. § 1056-B, among other elements of Maine's campaign laws. That litigation concluded recently when the First Circuit affirmed the District Court's holding that the reporting and disclosure requirements for BQCs were constitutional. *Nat'l Org. for Marriage v. McKee*, 669 F.3d 34 (1st Cir. 2012).[4] NOM's petition for certiorari is pending in the Supreme Court, but this Court denied its motion for stay on April 25, 2012.

As part of the federal litigation, NOM moved to quash subpoenas seeking access to evidence that would disclose the identities of its donors and communications between

---

[3] NOM seems to contend that the Commission did not make sufficient factual findings, but cites to the wrong section of the APA. (Pet. Br. 4 n.1.) Under 5 M.R.S.A. § 9061, an agency decision "shall be in writing *or stated in the record,* and shall include findings of fact sufficient to apprise the parties . . . of the basis for the decision." (Emphasis added). The recording referenced in the decision letter is still online at www.state.me.us/ethics/meetings/index.htm. The recording indicates that the Commission described the information as necessary to a "meaningful" investigation and ensured that it would be kept confidential. (Recording at 1:15:56 mark.) The February 19 memorandum was discussed briefly. The meeting minutes also outline the general content of the deliberations. (R. 37.)

[4] The complaint in federal District Court also included challenges to Maine's PAC registration, independent expenditure, and attribution and disclaimer laws. In a separate, earlier appeal, the First Circuit upheld the constitutionality of those provisions. *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34 (1st Cir. 2011).

3

NOM and SMM. The federal magistrate rejected NOM's First Amendment privilege claims twice. The first time, the District Court and the First Circuit upheld that ruling. *Nat'l Org. for Marriage v. McKee*, No. 10-1350 (1st Cir. June 7, 2010). The second time, the District Court upheld the ruling and NOM did not appeal.

## Discussion

Because this is an 80C appeal, the Court reviews the February 25, 2010 decision upholding the subpoenas for "abuse of discretion, error of law, or findings not supported by substantial evidence in the record." *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013. Petitioners have not specified the grounds on which they appeal the Commission's decision.

I.      *Statutory framework*

The underlying investigation in question seeks to determine whether NOM qualifies as a "ballot question committee" (BQC) pursuant to 21-A M.R.S.A. § 1056-B. A BQC is defined as an entity, other than a PAC, "who receives contributions or makes expenditures, other than by contribution to a political action committee, aggregating in excess of $5,000 for the purpose of initiating or influencing a campaign." § 1056-B. BQCs are required to file certain reports that include the name and address of each contributor. § 1056-B(2). A "contribution" is defined several ways, including:

A.    Funds that the contributor specified were given in connection with a campaign;
B.    Funds provided in response to a solicitation that would lead the contributor to believe that the funds would be used specifically for the purpose of initiating or influencing a campaign;
C.    Funds that can reasonably be determined to have been provided by the contributor for the purpose of initiating or influencing a campaign when viewed in the context of the contribution and the recipient's activities regarding a campaign . . . .

4

§ 1056-B(2-A). As mentioned, the First Circuit recently upheld the constitutionality of the BQC law, including its definition of "contribution." *Nat'l Org. for Marriage v. McKee*, 669 F.3d 34 (1st Cir. 2012). Whether the Commission characterizes NOM as a BQC depends in large part on the nature of donations it received in 2009 and whether those qualify as "contributions" under the statutory definition.

The Commission on Governmental Ethics and Elections Practices is charged with investigating the registration and financial activities of different political entities including BQCs. 21-A M.R.S.A. § 1003(1). For this purpose, the Commission has authority to "subpoena witnesses and records." *Id.* "Investigative working papers," which are defined to include the material at issue here, are strictly confidential. § 1003(3-A).

Under the APA, "any witness subpoenaed may petition the agency to vacate or modify a subpoena issued in its name." 5 M.R.S.A. § 9060(1)(C). Following "such investigation as the agency considers appropriate," the Commission may grant the petition if it finds that the evidence sought through the subpoena "does not relate with reasonable directness to any matter in question." *Id.*

II.    *First amendment privilege*

Overlying the statutory framework, however, is Petitioners' assertion of First Amendment privilege. It is well established that the freedom of association is encompassed within the First Amendment's guarantee of free speech and expression. *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). While direct restraint on the freedom to

associate is a more obvious abridgement of this right, the "compelled disclosure of affiliation with groups engaged in advocacy" may accomplish the same thing. *Id.* at 462.

When compelled disclosure of association data would operate as a "substantial restraint" on its members' freedom to associate, the requesting party must demonstrate a "compelling" interest in the disclosure. *Id.* at 462-463. In the *NAACP* case, the Supreme Court held that the NAACP was protected by First Amendment privilege from disclosing its membership list to the State, which was conducting an investigation into whether the organization should have registered as a foreign corporation under state law. The Court reasoned that public disclosure of the list would endanger individual members due to racial hostility in the south, and the government had failed to demonstrate a compelling need for the membership information to complete its investigation. *Id.* at 462-464.

The First Circuit uses a two-part test to establish First Amendment privilege. First, the target of the disclosure must make a *prima facie* showing, typically that "enforcement of the disclosure requirement will result in harassment of current members, a decline in new members, or other chilling of associational rights." *Unites States v. Comley*, 890 F.2d 539, 544 (1st Cir. 1989). This showing requires the target to produce "solid, uncontroverted evidence" of chill. *Id.* Then, the burden shifts to the government to demonstrate both "a compelling need for the material sought and that there is no significantly less restrictive alternative for obtaining the information." *Id.*

Here, Petitioners appear to advance their *prima facie* case for chill from three angles. First, NOM donors will cease participating if they believe their personal information will be publicly disclosed. (Bernatche Aff.) The Commission, meanwhile, points out that any materials disclosed would remain confidential, and, thus, fear of

public reprisal or harassment is unwarranted.   Second, even without *public* disclosure, Petitioners postulate that donors will cease contributing if they believe they will be forced to participate in an investigation or litigation – for example, by being deposed.  (Brown Dec. ¶ 4.)  The Commission argues that this speculation falls short of the "solid, uncontroverted evidence" required under *Comley*.  Third, Petitioners maintain that even confidential disclosure of communications between NOM and SMM would substantially alter how campaign personnel communicate internally.  (Brown Dec. ¶ 5.)

This aspect of the dispute boils down to the evidentiary standard applicable to the chill element, and the Court is unaware of any precedent in Maine directly on point. Petitioners urge the Court to apply more lenient standards as articulated by other jurisdictions.  For instance, the Eleventh Circuit assumed without deciding that forced member participation in a government investigation might "itself . . . indicate the possibility of harassment." *In re Grand Jury Proceeding*, 842 F.2d 1229, 1237 (11th Cir. 1988). *See also Tree of Life Christian Sch. v. City of Upper Arlington*, 2012 U.S. Dist. LEXIS 32205 (S.D. Ohio March 12, 2012) (finding it self-evident that disclosure of an anonymous donor's identity, and his probable deposition, would likely deter future participation in the association).  Additionally, the Ninth Circuit found *prima facie* chill when plaintiffs challenging California's Proposition 8 subpoenaed internal communications from proponents of the campaign, and one such target stated in a declaration that disclosure would cause him to "drastically alter how [he] communicate[s] in the future." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1163 (9th Cir. 2009).  The Court there overlooked the fact that the evidence lacked "particularity," reasoning that the chilling effects of the disclosure in question were "self-evident. " *Id.*

7

The Court accepts NOM's arguments about chill. It is "self-evident" to the Court that forced involvement in an investigation, through depositions, for example, could have a chilling effect on participation. However, assuming Petitioners have established chill, the Commission has demonstrated a compelling need for the information requested. It is settled that the government has a compelling interest in providing voters with accurate information about the source of campaign funds. *Nat'l Org. for Marriage v. McKee*, 669 F.3d 34, 40 (1st Cir. 2012) ("knowing which interested parties back or oppose a ballot measure is critical . . . ."). *See also Buckley v. Valeo*, 424 U.S. 1, 66-67 (1976) (explaining how campaign disclosure laws serve government interests in maintaining an informed electorate and deterring corruption). It follows that the Commission has a compelling interest in fulfilling its legislatively mandated obligation to enforce disclosure requirements against those entities bound by them, including BQCs. Logically, this includes investigating whether a financially influential political entity like NOM is a BQC to begin with. NOM does not argue otherwise.

Commissioner McKee stated at the February 25 meeting that the information sought was necessary to a "meaningful" investigation into whether NOM met the statutory definition of a BQC. (R. 37.) As articulated in the February 19 Commission memorandum and reiterated on appeal here, the Commission has a compelling need for the information because it is directly relevant to its determination of NOM's status under the BQC statute. (R. 25 at 12.)

More specifically, NOM's status as a BQC depends largely on whether it received "contributions" under the statutory definition.[5] Whether a donation qualifies as a "contribution," in turn, depends largely on what the donor knew and believed in giving the funds to NOM. Again, funds will be considered contributions if: (a) the donors specified that they were to be used for the campaign, (b) they were provided "in response to a solicitation that would lead the contributor to believe that [they] would be used specifically for the purpose of initiating or influencing" the campaign, or (c) it can "reasonably be determined" that they were "provided by the contributor for the purpose of initiating or influencing" the campaign. § 1056-B(2-A). "Accordingly, the Commission may need to question donors in order to learn what they were told about how their funds would likely be used, and whether they specified how their donations should be used." (Resp. Br. 19.) Communications between NOM and SMM might also reveal whether NOM received contributions as defined in this manner.

As a whole, thus, the information sought is rationally and even substantially related to two important interests: the voting public's interest in factual information about

---

[5] The Court rejects Petitioners' position that the information requested is not relevant because NOM made contributions to SMM, which is a PAC, and § 1056-B specifically exempts any "contribution to a political action committee." (Pet. Br. 10.) As the statute makes clear, there are two routes to becoming a BQC – by receiving "contributions . . . aggregating in excess of $5,000," or by making "expenditures, other than by contribution to a [PAC], aggregating in excess of $5,000." The Commission's website offering guidance on the topic corroborates this: "If an organization solicits and receives contributions for the purpose of initiating or influencing a ballot question and gives those funds to a PAC, the contributions received by the organization count towards the $5,000 threshold. For example, if a trade association solicits funds from its members in order to make a contribution to a PAC involved in a ballot question, the trade association may have to register as a ballot question committee if it raised more than $5,000. It is not the contribution to the PAC that triggers the registration requirement; it is the fund-raising activity by the trade association that triggers it."
http://www.maine.gov/ethics/bqcs/guidance.htm. Although the ethics website is not in the record, both sides cited to it in briefs. (Pet. Br. 11, Pet. Supp. Br. 7, Resp. Br. 20.)

the financing of BQCs, and the government's interest in determining which entities should in fact be required to comply with BQC laws. The Court finds further that there is no less restrictive alternative to obtain the information sought. The Court can conceive of no other source for the information, and the parties do not suggest any viable alternatives.

Finally, it must be noted that the confidentiality provisions in the statute in place during the investigation serve to ameliorate any chill that would arise if donors were disclosed before a determination is made whether the entity in question is a BQC. In other words, the statutory scheme seems to provide the least restrictive alternative available which provides a measure of confidentiality, but at the same time allows the Commission to fulfill its legislative mandate.

Because the Court finds for the Commission, there is no need to review the *res judicata* argument introduced in the Commission's supplemental brief. To NOM's argument that the constitutionality of § 1056-B is still in doubt, and, thus, enforcement of the subpoenas is not appropriate, (Pet. Br. 12), either party can request that the Law Court stay the expected appeal of this order pending resolution of the certiorari petition filed by NOM.

**The entry will be:**

**The Court AFFIRMS the Commission's decision not to vacate or modify the subpoenas issued by the Commission on January 28, 2010.**

_6/27/12_

**DATE**

_[signature]_

**SUPERIOR COURT JUSTICE**

10

| Date Filed | 3/4/10 | Kennebec | Docket No. | AP-10-12 |

County

**J. Murphy**

Action ___Petition For Review___
80C

The National Organization for Marriage,
Stand for Marriage Maine PAC, and
Brian Brown

vs.

The Maine Commission on Governmental
Ethics and Election Practices

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|

Plaintiff's Attorney:

-Stephen C. Whiting, Esq.
75 Pearl Street, Suite 207
Portland, ME 04101-4101
-Josiah Neeley, Esq. (pro hac vice)
- James Bopp, Jr, Esq. (pro hac vice)
 1 South 6th Street
Terre Haute, IN 47807-3510

- Kaylan Phillips, Esq. (pro hac
2029 K Street NW, Suite  vice)
Wash, DC 20006   300

Defendant's Attorney:

Phyllis Gardiner, AAG
Thomas Knowlton, AAG
6 State House Station
Augusta Maine 04333-0006

| Date of Entry | |
|---|---|
| 3/5/10 | Petition For Review Of Agency Action, with Exhibits 1-11, filed 3/4/10. Motion To Admit James Bopp, Jr. and Josiah Neeley Pro Hac Vice, filed 3/4/10. |
| 3/11/10 | Certified mail return receipt made upon Janet Mills, AAG on 3/4/10. Certified mail return receipt made upon jonathan Wayne, Exec. Dir. on 3/4/10. |
| 3/18/09 | Letter entering appearance, filed. s/Gardiner, AAG s/Knowlton, AAG |
| 3/29/10 | Certified Agency Record, filed. s/Gardiner, AAG **NOTICE AND BRIEFING SCHEDULE ISSUED** Copies to attys. of record |
| | Respondent's Motion to Dismiss with Incorporated Memorandum of Law, filed. s/Gardiner, AAG Proposed Order, filed. |
| 4/5/10 | Motion to Stay, filed. s/Whiting, Esq. Proposed Order, filed. Request for Hearing, filed. s/Whiting, Esq. |
| 4/14/10 | MOTION TO ADMIT JAMES BOPP, JR AND JOSIAH NEELEY PRO HAC VICE, Marden, J. DENIED. Insufficient information Copies to attys. of record. |
| 4/16/10 | Respondent's Opposition to Motion to Stay, filed. s/Gardiner, AAG Request oral arguments be scheduled. |
| 4/20/10 | Response to Motion to Dismiss, filed. s/Whiting, Esq. |
| 4/26/10 | Reply in Support of Motion to Stay, filed. s/Whiting, Esq. |
| 4/27/10 | Respondent's Reply Memorandum in Support of its Motion to Dismiss, filed. s/Gardiner, AAG |
| 4/27/10 | Motion for Reconsideration and Motion to Admit James Bopp, Jr. and Josiah Neeley Pro Hac Vice with Consolidated Memorandum of Law, filed. s/Whiting, Esq. Proposed Order, filed. |

| Date of Entry | Docket No. ___AP-10-12___ |
|---|---|
| 4/29/10 | Petitioners' Amended Motion to Admit Attorneys James Bopp, Jr. and Josiah Neeley Pro Hac Vice, filed. s/Whiting, Esq. |
| | Notice of setting for 5/13/10 @ 9:30 sent to attorneys of record. Oral arguments |
| 5/10/10 | Petitioners' Appeal Brief, filed. s/Whiting, Esq. |
| 5/12/10 | Hearing held with the Hon. Justice Donald Marden, presiding. Josiah Neeley, Esq. and Stephen Whiting, Esq. for the Petitioners Phyllis Gardiner, AAG and Thomas Knowlton, AAG for the Respondents. Oral arguments made to the Court. Court to take matter under advisement. |
| 6/9/10 | ORDER, Marden, J. (6/7/10) Respondent's motion to dismiss the petitions for agency review of a den to vacate or modify is GRANTED IN PART and DENIED IN PART as follows: The petition challenging the refusal to vacate or modifythe subpoena to the National Organization for Marriage is DISMISSED except for that portion of its witness section #4 reading:"the identity of any donors to NOM who contributed $5,000 or more in 2009,..." and that portion of its document production section #3 reading:"...donor lists,..."; |
| | The excepted portions are VACATED. |
| | The matter is REMANDED to the State of Maine Commission on Governmental ethics and Election Practices for further proceedings. |
| | Copies to attys. of record Copies to repositories |
| 6/8/10 | Respondent's Brief, filed. s/Gardiner, AAG |
| 6/9/10 | Letter regarding pending motion to stay, filed. s/Whiting, Esq.(6/1/10) |
| 6/10/10 | ORDER, Marden, J. The ORDER of June 7, 2010 is RESCINDED and ordered EXPUNGED. ORDER STAYING ADMINISTRATIVE PROCEEDING, Marden, J. Hearing was had. THEREFORE, THE ENTRY WILL BE: "Petitioners' Motion to Stay is granted. the Respondent is hereby order.. to stay administrative proceedings against the Petitioners pending fina. resolution of the Petitioners' appeal in this action. Copies to attys. of record. |
| | ORDER ON MOTION, Marden, J. The motion to dismiss of respondent is DENIED. Copies mailed to attys. of record. |
| 6/11/10 | Objection to Recusal by Judge Marden, filed. s/Bopp, Esq. s/Whiting, Esq. |
| 6/15/10 | ORDER, Marden, J. The Court issued a decision without consideration of Respondent's Brie.. I must recuse. Objection not sustained. Copies to attys. of record. |
| 6/18/10 | Respondent's Motion for Clarification and/or Reconsideration of "Order Staying Administrative Proceeding, filed. s/Gardiner, AAG |
| 6/22/10 | Reply in Support of Petition for Review, filed. s/Whiting, Esq. |

AP10-12

The National Organization for Marriage vs. ME. Comm. on Governmental Ethics

| Date of Entry | |
|---|---|
| 7/13/10 | Notice of Appeal, filed. s/Whiting, Esq. (7/2/10)<br>Entire file along with copy of docket sheet mailed to Matthew Pollack, Clerk of the Law Court<br>Copies of docket sheets mailed to attys. of record. |
| 7/15/10 | Receipt of Clerk's Record in Law Court, s/Joan Galli |
| 7/22/10 | Notice of Docketing in the Law Court, filed. s/Pollack, Clerk<br>This appeal was docketed in the Law Court on July 20, 2010, docket number assigned is KEN-10-396 |
| 9/30/10 | File returned from Law Court. |
| 11/4/10 | Order Dismissing Appeal, Gorman, J. (8/16/10)<br>The appeal is DISMISSED as interlocutory. |
| 12/8/10 | Oral Argument scheduled for 12/29/10 at 1:00 p.m.<br>Motion/Oral Argument list mailed to attorneys of record. |
| 12/8/10 | ORDER, Marden, J. (5/11/10)<br>Petitioners' Motion for Reconsideration, Motion to Amend Motion to Admit James Bopp, Jr. and Josiah Neeley pro had vice, and Amended Motion to Admit James Bopp, Jr. and Josiah Neeley pro hac vice are all granted. Visiting Attorneys James Bopp, Jr. and Josiah Neeley are permitted to represent the Petitioners in this action, along with local counsel Stephen C. Whiting. |
| 12/17/10 | Motion to Continue Hearing, filed. s/Whiting, Esq. |
| 12/22/10 | ORDER, Murphy, J.<br>Motion to Continue GRANTED. Continued to 1/19/11 at 10:00 a.m.<br>Copy to Attys Whiting, Bopp, Nelley, and AAG Gardiner |
| 1/19/11 | Letter, filed. s/Gardiner, AAG |
| 1/19/11 | Oral Argument hearing held 1/19/11. Murphy, J. Josiah Neeley, Esq. and Stephen Whiting, Esq. appeared for Petitioner. Phyllis Gardiner, AAG and Thomas Knowlton, AAG, appeared for Respondent.<br>Letters to be filed within 14 days.<br>Tape 1387, Index 0-2006 |
| 2/8/11 | Letter per J. Murphy's order of 1/19/11, filed 2/1/11. s/Gardiner, AAG |
| 2/8/11 | Letter per J. Murphy's order of 1/19/11, filed 2/3/11. s/Neeley, Esq. |
| 3/8/11 | ORDER, Murphy, J. (3/5/11)<br>The Court on its own motion hereby stays the proceedings and defers ruling on the merits of this Rule 80(c) appeal until final resolution of the matter now on appeal to the First Circuit Court of Appeals from the United States District Court for the District of Maine, National Organization for Marriage and American Principles in Action v. Walter F. Mckee, et al., Civil No. 09-538-B-H.<br>Copy mailed to Attys Whiting, Neeley, Bopp, and AAG Gardiner, AAG Knowlton. |
| 3/8/11 | Copy of final decision, J. Hornby, filed 2/22/11. s/Gardiner, AAG |

cont'd

| Date of Entry | Docket No. AP-10-12 |
|---|---|
| 3/9/11 | ORDER CLARIFYING SCOPE OF STAY, Murphy, J. (1/20/11) Petitioners' Motion to Stay is GRANTED. Pending resolution of Petitioners' Rule 80C appeal, the Commission's enforcement of any subpoenas is stayed to the extent that those subpoenas seek information that would reveal NOM's donors. Otherwise, the Commission's investigation is not stayed. Copy mailed to Attys Whiting, Neeley, Bopp, and AAG Gardiner, AAG Knowlton. |
| 2/29/12 | Copy of final decision of the US Court of Appeals for the First Circuit, Docket No. 11-1196, filed. s/Gardiner, AAG |
| 3/21/12 | ORDER, Murphy, J. No opposition to this request having been filed, the Court orders the stay to be lifted. Parties have until 4/20/12 to file any supplemental arguments they wish to make, particularly in light of U.S. Court of Appeals decision referenced above. The Court will take this matter under advisement on 4/20/12. Copy to Attys Whiting, Neeley, Bopp, and AAG Gardiner, AAG Knowlton. |
| 4/18/12 | Unopposed Motion For Enlargement Of Time, filed 4/17/12. s/Whiting, Esq. Motion To Stay Proceedings, filed 4/17/12. s/Whiting, Esq. Motion To Admit Attorney Kaylan L. Phillips Pro Hac Vice, filed 4/17/12. s/Whiting, Esq. |
| 4/19/12 | ORDER, Murphy, J. The Motion To Admit Attorney Kaylan L. Phillips ProHac Vice as counsel for Petitioners is GRANTED. Copy to Attys Whiting, Neeley, Bopp, and AAG Gardiner, AAG Knowlton. ORDER, Murphy, J. (Motion For Enlargement Of Time) Motion is granted in part. Deadline of 4/20/12 no longer in effect. Court will discuss deadline for further filings on 4/25/12 at 9:00 am. ORDER, Murphy, J. (Motion To Stay Proceedings) Hearing on this Motion to be conducted telephonically on 4/25/12 at 9:00 a.m. AAG Gardiner to connect all counsel of record and Court. Copy of all orders to attorneys above. |
| 4/25/12 | Hearing held, J. Murphy presiding; Janette Cook, Court Reporter; Kaylan Phillips, Esq. for Petitioner and Phyllis Gardiner, AAG for Respondent. ORDER, Murphy, J. Motion for Stay is DENIED for reasons stated on the record. Motion to Enlarge is granted. Parties have until 6/6/12 to file supplemental briefs, and until 6/13/12 to file rebuttal. Court will take case under advisement at that time. Copy to Attys Whiting and Phillips, AAG Gardiner, AAG Knowlton. |
| 6/7/12 | Supplemental Appeal Brief, filed 6/6/12. s/Whiting, Esq. |
| 6/7/12 | Respondent's Supplemental Rule 80C Brief, filed 6/6/12. s/Gardiner, AAG |

| Date of Entry | Docket No. AP-10-12 |
|---|---|
| 6/14/12 | Petitioner's Rebuttal To Respondent's Supplemental Brief, filed 6/13/12. s/Whiting, Esq.  s/Phillips, Esq. |
| 6/14/12 | Respondent's Reply To Petitioner's Supplemental Appeal Brief, filed 6/13/12. s/Gardiner, AAG |
| 6/28/12 | ORDER ON RULE 80C APPEAL, Murphy, J.  (6/27/12)<br>The Court AFFIRMS the Commission's decision not to vacate or modify the subpoenas issued by the Commission on January 28, 2010.<br>Copy to Attys Whiting and Phillips, AAG Gardiner, AAG Knowlton.<br>Copy to repositories. |

STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-10-12
MLYM KEN - 6/27/2012

NATIONAL ORGANIZATION FOR
MARRIAGE, STAND FOR MARRIAGE
MAINE PAC, and BRIAN BROWN,
    Petitioners

v.

**ORDER ON RULE
80C APPEAL**

MAINE COMMISSION ON
GOVERNMENTAL ETHICS AND
ELECTION PRACTICES,
    Respondent


Before the Court is Petitioners' Rule 80C appeal from Respondent's February 25,

2010 decision upholding certain subpoenas issued as part of an investigation into whether

the National Organization for Marriage qualified as a "ballot question committee"

pursuant to 21-A M.R.S.A. § 1056-B due to its role in the 2009 referendum vote on gay

marriage.

### Factual Background

On October 1, 2009, Maine's Commission on Governmental Ethics and Election

Practices (the Commission) voted to investigate the National Organization for Marriage

(NOM) to determine whether it was in violation of Maine campaign laws by not

registering as a "ballot question committee" (BQC) under 21-A M.R.S.A. § 1056-B. (R.

1

1.) The investigation was based on concerns over large donations NOM made to Stand for Marriage Maine (SMM), a PAC dedicated to defeating the legalization of gay marriage through the November 2009 referendum vote. *Id.* By the end of the campaign, NOM had reportedly donated $1.93 million to SMM. (R. 11.)

On January 28, 2010, the Commission issued NOM a subpoena setting a deposition where a representative would be required to testify regarding the sources of NOM's revenue in 2009 – including the identity of its donors who contributed $5,000 or more – as well as produce documents to that effect. (R. 15.) Additionally, the deponent would be required to testify about NOM's contributions to SMM and produce all documents reflecting communications between NOM and SMM.[1] *Id.*

On February 11, 2010, Petitioners filed petitions to vacate or modify the subpoenas, arguing that the requests were overbroad and the information was privileged under the First Amendment.[2] (R. 18-22.) On February 19, 2010, Jonathan Wayne, executive director of the Commission, and AAG Phyllis Gardiner sent a thorough memorandum to the Commission members detailing the facts and law pertaining to the petitions. (R. 25.) The memo concluded that the information sought would remain

---

[1] The Commission issued a second subpoena to NOM's executive director Brian Brown, who also sat on SMM's executive committee. He was instructed to be prepared to testify about the "plans and decisions" made by SMM regarding funds spent on the 2009 referendum and all documents reflecting planned or actual expenditures by NOM and SMM relating to the 2009 referendum. (R. 16.)

[2] On appeal, Petitioners rely heavily on two pieces of evidence to demonstrate First Amendment chill. On February 19, 2010, Brian Brown submitted a declaration that detailed how disclosure would alter the way in which he communicates within campaigns in the future. (R. 35.) On February 9, 2010, Joseph Bernatche, a donor to SMM, submitted an affidavit that explained how he had been designated as a "red-hot bigot" online due to public disclosure of his contribution. (R. 34.) The extent to which the Commission was made aware of or considered this evidence is unclear.

2

confidential and was highly relevant to the investigation of whether NOM qualified as a BQC; thus, it was not privileged under the First Amendment. *Id.* at 12-15.

On February 25, 2010, the Commission met and voted to deny the petitions to vacate or modify the subpoenas. (R. 37, 38.) The Commission issued a letter to Petitioners' counsel, which did not include full reasoning, but directed counsel to an online audio recording of the Commission's meeting.[3] (R. 38.)

During the same timeframe, NOM had also initiated a lawsuit in federal District Court challenging the constitutionality of the BQC law, 21 M.R.S.A. § 1056-B, among other elements of Maine's campaign laws. That litigation concluded recently when the First Circuit affirmed the District Court's holding that the reporting and disclosure requirements for BQCs were constitutional. *Nat'l Org. for Marriage v. McKee*, 669 F.3d 34 (1st Cir. 2012).[4] NOM's petition for certiorari is pending in the Supreme Court, but this Court denied its motion for stay on April 25, 2012.

As part of the federal litigation, NOM moved to quash subpoenas seeking access to evidence that would disclose the identities of its donors and communications between

---

[3] NOM seems to contend that the Commission did not make sufficient factual findings, but cites to the wrong section of the APA. (Pet. Br. 4 n.1.) Under 5 M.R.S.A. § 9061, an agency decision "shall be in writing *or stated in the record*, and shall include findings of fact sufficient to apprise the parties . . . of the basis for the decision." (Emphasis added). The recording referenced in the decision letter is still online at www.state.me.us/ethics/meetings/index.htm. The recording indicates that the Commission described the information as necessary to a "meaningful" investigation and ensured that it would be kept confidential. (Recording at 1:15:56 mark.) The February 19 memorandum was discussed briefly. The meeting minutes also outline the general content of the deliberations. (R. 37.)

[4] The complaint in federal District Court also included challenges to Maine's PAC registration, independent expenditure, and attribution and disclaimer laws. In a separate, earlier appeal, the First Circuit upheld the constitutionality of those provisions. *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34 (1st Cir. 2011).

3

NOM and SMM. The federal magistrate rejected NOM's First Amendment privilege claims twice. The first time, the District Court and the First Circuit upheld that ruling. *Nat'l Org. for Marriage v. McKee*, No. 10-1350 (1st Cir. June 7, 2010). The second time, the District Court upheld the ruling and NOM did not appeal.

## Discussion

Because this is an 80C appeal, the Court reviews the February 25, 2010 decision upholding the subpoenas for "abuse of discretion, error of law, or findings not supported by substantial evidence in the record." *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013. Petitioners have not specified the grounds on which they appeal the Commission's decision.

I. *Statutory framework*

The underlying investigation in question seeks to determine whether NOM qualifies as a "ballot question committee" (BQC) pursuant to 21-A M.R.S.A. § 1056-B. A BQC is defined as an entity, other than a PAC, "who receives contributions or makes expenditures, other than by contribution to a political action committee, aggregating in excess of $5,000 for the purpose of initiating or influencing a campaign." § 1056-B. BQCs are required to file certain reports that include the name and address of each contributor. § 1056-B(2). A "contribution" is defined several ways, including:

A. Funds that the contributor specified were given in connection with a campaign;

B. Funds provided in response to a solicitation that would lead the contributor to believe that the funds would be used specifically for the purpose of initiating or influencing a campaign;

C. Funds that can reasonably be determined to have been provided by the contributor for the purpose of initiating or influencing a campaign when viewed in the context of the contribution and the recipient's activities regarding a campaign . . . .

4

§ 1056-B(2-A). As mentioned, the First Circuit recently upheld the constitutionality of the BQC law, including its definition of "contribution." *Nat'l Org. for Marriage v. McKee*, 669 F.3d 34 (1st Cir. 2012). Whether the Commission characterizes NOM as a BQC depends in large part on the nature of donations it received in 2009 and whether those qualify as "contributions" under the statutory definition.

The Commission on Governmental Ethics and Elections Practices is charged with investigating the registration and financial activities of different political entities including BQCs. 21-A M.R.S.A. § 1003(1). For this purpose, the Commission has authority to "subpoena witnesses and records." *Id.* "Investigative working papers," which are defined to include the material at issue here, are strictly confidential. § 1003(3-A).

Under the APA, "any witness subpoenaed may petition the agency to vacate or modify a subpoena issued in its name." 5 M.R.S.A. § 9060(1)(C). Following "such investigation as the agency considers appropriate," the Commission may grant the petition if it finds that the evidence sought through the subpoena "does not relate with reasonable directness to any matter in question." *Id.*

## II. *First amendment privilege*

Overlying the statutory framework, however, is Petitioners' assertion of First Amendment privilege. It is well established that the freedom of association is encompassed within the First Amendment's guarantee of free speech and expression. *NAACP v. Alabama*, 357 U.S. 449, 460 (1958). While direct restraint on the freedom to

5

associate is a more obvious abridgement of this right, the "compelled disclosure of affiliation with groups engaged in advocacy" may accomplish the same thing. *Id.* at 462.

When compelled disclosure of association data would operate as a "substantial restraint" on its members' freedom to associate, the requesting party must demonstrate a "compelling" interest in the disclosure. *Id.* at 462-463. In the *NAACP* case, the Supreme Court held that the NAACP was protected by First Amendment privilege from disclosing its membership list to the State, which was conducting an investigation into whether the organization should have registered as a foreign corporation under state law. The Court reasoned that public disclosure of the list would endanger individual members due to racial hostility in the south, and the government had failed to demonstrate a compelling need for the membership information to complete its investigation. *Id.* at 462-464.

The First Circuit uses a two-part test to establish First Amendment privilege. First, the target of the disclosure must make a *prima facie* showing, typically that "enforcement of the disclosure requirement will result in harassment of current members, a decline in new members, or other chilling of associational rights." *Unites States v. Comley*, 890 F.2d 539, 544 (1st Cir. 1989). This showing requires the target to produce "solid, uncontroverted evidence" of chill. *Id.* Then, the burden shifts to the government to demonstrate both "a compelling need for the material sought and that there is no significantly less restrictive alternative for obtaining the information." *Id.*

Here, Petitioners appear to advance their *prima facie* case for chill from three angles. First, NOM donors will cease participating if they believe their personal information will be publicly disclosed. (Bernatche Aff.) The Commission, meanwhile, points out that any materials disclosed would remain confidential, and, thus, fear of

6

public reprisal or harassment is unwarranted. Second, even without *public* disclosure, Petitioners postulate that donors will cease contributing if they believe they will be forced to participate in an investigation or litigation – for example, by being deposed. (Brown Dec. ¶ 4.) The Commission argues that this speculation falls short of the "solid, uncontroverted evidence" required under *Comley*. Third, Petitioners maintain that even confidential disclosure of communications between NOM and SMM would substantially alter how campaign personnel communicate internally. (Brown Dec. ¶ 5.)

This aspect of the dispute boils down to the evidentiary standard applicable to the chill element, and the Court is unaware of any precedent in Maine directly on point. Petitioners urge the Court to apply more lenient standards as articulated by other jurisdictions. For instance, the Eleventh Circuit assumed without deciding that forced member participation in a government investigation might "itself . . . indicate the possibility of harassment." *In re Grand Jury Proceeding*, 842 F.2d 1229, 1237 (11th Cir. 1988). *See also Tree of Life Christian Sch. v. City of Upper Arlington*, 2012 U.S. Dist. LEXIS 32205 (S.D. Ohio March 12, 2012) (finding it self-evident that disclosure of an anonymous donor's identity, and his probable deposition, would likely deter future participation in the association). Additionally, the Ninth Circuit found *prima facie* chill when plaintiffs challenging California's Proposition 8 subpoenaed internal communications from proponents of the campaign, and one such target stated in a declaration that disclosure would cause him to "drastically alter how [he] communicate[s] in the future." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1163 (9th Cir. 2009). The Court there overlooked the fact that the evidence lacked "particularity," reasoning that the chilling effects of the disclosure in question were "self-evident." *Id.*

The Court accepts NOM's arguments about chill. It is "self-evident" to the Court that forced involvement in an investigation, through depositions, for example, could have a chilling effect on participation. However, assuming Petitioners have established chill, the Commission has demonstrated a compelling need for the information requested. It is settled that the government has a compelling interest in providing voters with accurate information about the source of campaign funds. *Nat'l Org. for Marriage v. McKee*, 669 F.3d 34, 40 (1st Cir. 2012) ("knowing which interested parties back or oppose a ballot measure is critical . . . ."). *See also Buckley v. Valeo*, 424 U.S. 1, 66-67 (1976) (explaining how campaign disclosure laws serve government interests in maintaining an informed electorate and deterring corruption). It follows that the Commission has a compelling interest in fulfilling its legislatively mandated obligation to enforce disclosure requirements against those entities bound by them, including BQCs. Logically, this includes investigating whether a financially influential political entity like NOM is a BQC to begin with. NOM does not argue otherwise.

Commissioner McKee stated at the February 25 meeting that the information sought was necessary to a "meaningful" investigation into whether NOM met the statutory definition of a BQC. (R. 37.) As articulated in the February 19 Commission memorandum and reiterated on appeal here, the Commission has a compelling need for the information because it is directly relevant to its determination of NOM's status under the BQC statute. (R. 25 at 12.)

More specifically, NOM's status as a BQC depends largely on whether it received "contributions" under the statutory definition.[5] Whether a donation qualifies as a "contribution," in turn, depends largely on what the donor knew and believed in giving the funds to NOM. Again, funds will be considered contributions if: (a) the donors specified that they were to be used for the campaign, (b) they were provided "in response to a solicitation that would lead the contributor to believe that [they] would be used specifically for the purpose of initiating or influencing" the campaign, or (c) it can "reasonably be determined" that they were "provided by the contributor for the purpose of initiating or influencing" the campaign. § 1056-B(2-A). "Accordingly, the Commission may need to question donors in order to learn what they were told about how their funds would likely be used, and whether they specified how their donations should be used." (Resp. Br. 19.) Communications between NOM and SMM might also reveal whether NOM received contributions as defined in this manner.

As a whole, thus, the information sought is rationally and even substantially related to two important interests: the voting public's interest in factual information about

---

[5] The Court rejects Petitioners' position that the information requested is not relevant because NOM made contributions to SMM, which is a PAC, and § 1056-B specifically exempts any "contribution to a political action committee." (Pet. Br. 10.) As the statute makes clear, there are two routes to becoming a BQC – by receiving "contributions . . . aggregating in excess of $5,000," *or* by making "expenditures, other than by contribution to a [PAC], aggregating in excess of $5,000." The Commission's website offering guidance on the topic corroborates this: "If an organization solicits and receives contributions for the purpose of initiating or influencing a ballot question and gives those funds to a PAC, the contributions received by the organization count towards the $5,000 threshold. For example, if a trade association solicits funds from its members in order to make a contribution to a PAC involved in a ballot question, the trade association may have to register as a ballot question committee if it raised more than $5,000. It is not the contribution to the PAC that triggers the registration requirement; it is the fund-raising activity by the trade association that triggers it."
http://www.maine.gov/ethics/bqcs/guidance.htm. Although the ethics website is not in the record, both sides cited to it in briefs. (Pet. Br. 11, Pet. Supp. Br. 7, Resp. Br. 20.)

the financing of BQCs, and the government's interest in determining which entities should in fact be required to comply with BQC laws. The Court finds further that there is no less restrictive alternative to obtain the information sought. The Court can conceive of no other source for the information, and the parties do not suggest any viable alternatives.

Finally, it must be noted that the confidentiality provisions in the statute in place during the investigation serve to ameliorate any chill that would arise if donors were disclosed before a determination is made whether the entity in question is a BQC. In other words, the statutory scheme seems to provide the least restrictive alternative available which provides a measure of confidentiality, but at the same time allows the Commission to fulfill its legislative mandate.

Because the Court finds for the Commission, there is no need to review the *res judicata* argument introduced in the Commission's supplemental brief. To NOM's argument that the constitutionality of § 1056-B is still in doubt, and, thus, enforcement of the subpoenas is not appropriate, (Pet. Br. 12), either party can request that the Law Court stay the expected appeal of this order pending resolution of the certiorari petition filed by NOM.

**The entry will be:**

**The Court AFFIRMS the Commission's decision not to vacate or modify the subpoenas issued by the Commission on January 28, 2010.**

_6/27/12_

**DATE**

**SUPERIOR COURT JUSTICE**

10